UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: LATAM AIRLINES GROUP S.A.,<br><br>　　　　　　　　　Debtor, | 22 Civ. 5891 (DLC) |
| TLA CLAIMHOLDERS GROUP,<br><br>　　　　　　　　　Appellant,<br><br>　　　　　-v-<br><br>LATAM AIRLINES GROUP S.A., *et al.*,<br><br>　　　　　　　　　Appellees. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PARENT AD HOC CLAIMANT GROUP'S MOTION FOR A DECLARATION
OF APPELLEE STATUS OR, IN THE ALTERNATIVE, TO INTERVENE**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Rachael L. Ringer
David E. Blabey Jr.
Natan Hamerman
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

*Attorneys for the Parent Ad Hoc Claimant Group*

The Parent Ad Hoc Claimant Group, by and through its undersigned counsel, hereby submits this reply memorandum of law in support of its motion for an order declaring or confirming that it is an appellee in the TLA Claimholders Group's appeal of the Bankruptcy Court's order and opinion confirming the chapter 11 plan (the "**Plan**") of LATAM Airlines Group S.A. and its affiliated debtors (the "**Debtors**") or, in the alternative, granting it permission to intervene as an appellee, and respectfully states as follows:

**REPLY**

In objecting to the Parent Ad Hoc Claimant Group's participation in this appeal, the TLA Claimholders Group blithely contends that an organized group of creditors who (1) hold billions of dollars of claims against the Debtors, (2) are the principal sponsors of the plan that the Appellant seeks to overturn on appeal, and (3) will suffer direct economic harm if Appellant succeeds, are neither natural appellees nor appropriate intervenors – all because the *Appellant* unilaterally determined not to list them as such in a form.  It is a remarkable arrogation of power, and it cannot be the law.  We respond briefly to several of the TLA Claimholders Group's most insupportable assertions, none of which warrants the denial of the motion.

*First*, the *Purdue Pharma* appeals are directly on point.  As explained in the Motion, Judge McMahon deemed the so-called Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants an appellee with no motion practice based on its litigation of the relevant issues below.  Memo. of Law at 2, 7.  Inexplicably, the TLA Claimholders Group contests this indisputable fact, but Judge McMahon's decision and order on appeal confirms that the group was, indeed, deemed an appellee.  *See In re Purdue Pharma, L.P.*, 635 B.R. 26, 38 (S.D.N.Y. 2021) ("The Appellees are the Purdue Debtors, as well as the Official Committee of Unsecured Creditors of Purdue Pharma L.P., et al., the Ad Hoc Committee of Governmental and Other Contingent

Litigation Claimants….[and others].").[1]

In fact, *Purdue Pharma* is doubly on point. Yes, certain non-debtor supporters of the plan were deemed appellees. But other parties whose litigation of the relevant issues below was not obvious to the court were simply asked to submit short motions directing the court to the relevant portions of the record. Those parties were promptly granted intervenor status:

> After reviewing the motions and the accompanying submissions, it seems clear that both the Multi-State Governmental Entities Group and the Ad Hoc Group of Individual Victims of Purdue Pharma L.P. et al. argued the issues that are being contested on appeal before the Bankruptcy Court. Their intervention motions are, therefore, granted, as I said they would be at the conference, and they shall henceforth be deemed Appellees in all the pending appeals.

*See* Order on the Pending Motions to Intervene, *In re Purdue Pharma Bankruptcy Appeals*, No. 21-cv-7532 (S.D.N.Y. Oct. 14, 2021) [Dkt. No. 60] (submitted as Exhibit F to the Parent Ad Hoc Claimant Group's motion to intervene). Thus, under either prong of *Purdue Pharma*'s approach, the Parent Ad Hoc Claimant Group is properly treated as an appellee here.

*Second*, the TLA Claimholders Group's proposed rule for appellee status is unprincipled and subject to abuse. Appellee status, as they would have it, hinges entirely on whether the appellant lists a party as an "appellee." Thus, since "the TLA Claimholders took an appeal only against the Debtors, listing the Parent Claimholders under the heading 'Other Parties,'" the Parent Ad Hoc Claimant Group is not an appellee. Opp. Br. at 7. But no rational legal system would assign the appellant such power. If the TLA Claimholders Group were correct, they could have chosen to list *no* party as an appellee, freeing them to pursue their appeals unopposed. This cannot be the law, and it shows why the identification of an appellee must be moored in the substance of the underlying litigation, not the procedure of a form. In a bankruptcy case, where

---

[1] Lest Judge McMahon's description of the group as an "appellee" be deemed loose language, the very next sentence of her opinion referred to another party supporting the plan as merely an amicus curiae. *See id*.

2

multiple parties may (and often do) litigate a single contested matter, Judge McMahon's rule regarding appellee status makes perfect sense.

The dictionary does not compel a different result. To say that an appellee is a "party against whom an appeal is taken and whose role is to respond to that appeal" (Opp. Br. at 7) is simply to beg the question. From the Parent Ad Hoc Claimant Group's perspective, they *are* the party against whom the TLA Claimholders Group's appeal is taken – that is the very point of the motion to intervene – and they certainly view it as their role to respond in light of the appeal's potential impact on unsecured creditors of LATAM Parent (and future owners of the business), of which the Parent Ad Hoc Claimant Group comprises a majority. Of note, the dictionary does not say that an appellee is a "party who is listed by the appellant in the notice of appeal."

*Third*, the Parent Ad Hoc Claimant Group's motion is not untimely. True, the motion might have been filed earlier if the TLA Claimholders Group had not delayed for a week in responding to the Parent Ad Hoc Claimant Group's request to intervene (doing so only after further follow-up from the Parent Ad Hoc Claimant Group). *See* Memo of Law at 6-7. But Bankruptcy Rule 8013(g) gives an intervenor 30 days to file a motion, and the instant motion was filed well within that deadline (and only 16 days after the appeal was docketed).

Perhaps more to the point, however, the TLA Claimholders Group's purported timeliness concerns are premised on a false assumption: that the Parent Ad Hoc Claimant Group's participation in the appeal will alter the agreed briefing schedule. Nothing could be further from the truth. While the TLA Claimholders Group fails to mention it, the Parent Ad Hoc Claimant Group was party to the discussions that led to the agreed schedule, and fully intends to abide by it. To be clear, **the Parent Ad Hoc Claimant Group is prepared to submit its appellate brief by the August 8 deadline** and its intervention will therefore lead to no delay. Though hardly necessary

3

to add, the Parent Ad Hoc Claimant Group also does not intend simply to regurgitate the Debtors' arguments. As in the companion appeal to this one, the Parent Ad Hoc Claimant Group intends to submit a relatively short brief addressing a limited number of issues important to it and providing the Court with its unique perspective in its capacity as a group of majority unsecured creditors and future equity owners of the reorganized Company.

*Fourth*, it is disingenuous in the extreme to suggest that the Parent Ad Hoc Claimant Group has no "cognizable interest in the appeal." Opp. Br. at 14. The argument, it appears, is that nothing that happens at TLA could possibly affect creditors of another Debtor. Accepted as true, the argument still fails at the outset, as it is undisputed that members of the Parent Ad Hoc Claimant Group *are creditors of TLA*. *See, e.g.*, Opp. Br. at 14 (acknowledging as much).

Beyond this threshold frailty, the notion that developments at TLA are irrelevant to other Debtors is simply wrong. The Plan is a joint plan for all of the Debtors, and if the TLA Claimholders Group succeeds in overturning confirmation, it will be overturned as to all Debtors, not just TLA. The consequences for creditors of all Debtors would be disastrous.

The Court need not rely solely on the word of the Parent Ad Hoc Claimant Group – the Bankruptcy Court agrees. As the Bankruptcy Court found in confirming the Plan, "providing the TLA Claimholders with an additional recovery would reduce the recoveries to impaired creditors under the Plan and disrupting the delicate balance set forth in it." Confirmation Decision at 56. This finding was echoed in the Bankruptcy Court's order denying the TLA Claimholders Group's motion for a stay pending appeal, where the Court concluded that "[i]t is undisputed that if the TLA Claimholders were to succeed on their claim, the sole impact would not necessarily be payment of $145 million of PPI," but "[i]nstead, the Debtors and their stakeholders would need to consider how and whether to develop and incorporate a new plan and a new set of underlying

4

agreements that account for such an obligation." Bench Memorandum and Order Denying the TLA Claimholders' Motion for (I) A Stay of the Confirmation Order Pending Appeal and (II) Certain Injunctive Relief Pursuant to Rule 8007 [Bankr. Dkt. No. 5918] (the "**Stay Opinion**"), at 30-31.

Other relief sought in the context of this appeal cements its impact on the Parent Ad Hoc Claimant Group. In addition to its central effort to overturn confirmation, the TLA Claimholders Group has now also sought to stay the confirmation order. *See* Dkt. No. 29. Since a stay, if granted, would affect all Debtors (not just TLA), the Parent Ad Hoc Claimant Group has a strong interest in opposing it, just as it did before the Bankruptcy Court.

*Fifth*, the TLA Claimholders Group is likewise wrong to suggest that the Parent Ad Hoc Claimant Group (and other creditors) have somehow already agreed to payment of postpetition interest to the TLA Claimholders Group if a court finds that such interest is required. Opp. Br. at 15. The Bankruptcy Court has already considered and rejected precisely this assertion. *See* Memo. of Law at 10 (block quote of Bankruptcy Court's findings). The reality is that the Parent Ad Hoc Claimant Group, which holds consent rights over the substance of the Plan,[2] did not and has not agreed to fund a plan that pays the postpetition interest the TLA Claimholders Group is requesting. And without that funding, the Plan would fail.

It is no answer to contend, as the TLA Claimholders Group does, that the Parent Ad Hoc Claimant Group would surely reconsider if it were actually faced with reversal of the Plan on appeal. Opp. Br. at 15 (scoffing at the notion that creditors "will simply walk away"). For one thing, this is not relevant to the limited question of whether the Parent Ad Hoc Claimant Group

---

[2] *See, e.g.,* Plan § 10.1, Conditions to Confirmation (providing that the Plan and Confirmation Order must be in form and substance acceptable to the "Requisite Commitment Creditors," a defined term that includes the Parent Ad Hoc Claimant Group).

has an interest in the success of the appeal – of course it does. For another thing, as the Bankruptcy Court has already found, economic conditions have deteriorated since the terms of the Plan were negotiated, casting significant doubt on the Debtors' ability to salvage the Plan if any of its central components are disturbed on appeal. *See* Stay Opinion at 19.

*Finally*, while Bankruptcy Rule 8013(g) does not require the Parent Ad Hoc Claimant Group to show that it is not adequately represented by the Debtors, it should be obvious that it is not. The members of the Parent Ad Hoc Claimant Group are *creditors* of the Debtors, against whom they hold *claims*. The Debtors are fiduciaries, with obligations to all their creditors; the Parent Ad Hoc Claimant Group acts in its own economic interests. While the Debtors and the Parent Ad Hoc Claimant Group are currently united in opposing the TLA Claimholders Group's appeal (and related stay motion), there is no guarantee their strategic aims will forever align. The Debtors, moreover, can assert only their own rights, not those of their creditors. *See, e.g.*, *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416, 434 (1972). It is up to the Parent Ad Hoc Claimant Group to advocate the inequities to *creditors* of the TLA Claimholders Group's gambit to secure payment at more than in full while other creditors receive cents on the dollar.

For these reasons and those stated in the Motion, the Parent Ad Hoc Claimant Group respectfully requests that the Court order that the Parent Ad Hoc Claimant Group is an appellee or permit it to intervene as one.

Dated: August 4, 2022         KRAMER LEVIN NAFTALIS & FRANKEL LLP
New York, New York

                                             */s/ Rachael L. Ringer*
                                             Kenneth H. Eckstein
                                             Rachael L. Ringer
                                             David E. Blabey Jr.
                                             Natan Hamerman
                                             Kramer Levin Naftalis & Frankel LLP
                                             1177 Avenue of the Americas

        New York, New York 10036
        Telephone: (212) 715-9100
        Facsimile:  (212) 715-8000
        Email: keckstein@kramerlevin.com
               rringer@kramerlevin.com
               dblabey@kramerlevin.com
               nhamerman@kramerlevin.com

*Counsel to the Parent Ad Hoc Claimant Group*