No. 22-CV-05891

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

IN RE LATAM AIRLINES GROUP S.A., ET AL.,

*Debtors,*

TLA CLAIMHOLDERS GROUP,

*Appellant,*

– v. –

LATAM AIRLINES GROUP S.A., ET AL.,

*Appellees.*

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK (GARRITY, J.)

IN RE LATAM AIRLINES GROUP, S.A., ET AL., CASE NO. 20-11524-JLG

## BRIEF FOR APPELLEES

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Jeffrey A. Rosenthal
Lisa M. Schweitzer
David H. Herrington
Abena A. Mainoo
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Appellees LATAM Airlines Group S.A., et al.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rules 8012 and 8014(a)(1) of the Federal Rules of Bankruptcy Procedure, Appellees LATAM Airlines Group S.A., Lan Cargo S.A., Transporte Aereo S.A., Inversiones Lan S.A., Technical Training LATAM S.A., LATAM Travel Chile II S.A., Lan Pax Group S.A., Fast Air Almacenes De Carga S.A., Linea Aerea Carguera De Colombia SA, Aerovias De Integracion Regional S.A., LATAM Finance LTD, LATAM Airlines Ecuador S.A., Professional Airline Cargo Services, LLC, Cargo Handling Airport Services, LLC, Maintenance Service Experts, LLC, Lan Cargo Repair Station LLC, Prime Airport Services Inc., Professional Airline Maintenance Services, LLC, Connecta Corporation, Peuco Finance Ltd., Latam Airlines Peru S.A., Inversiones Aereas S.A., Holdco Colombia II Spa, Holdco Colombia I Spa, Holdco Ecuador S.A., Lan Cargo Inversiones S.A., Lan Cargo Overseas Ltd, Mas Investment Ltd., Professional Airline Services Inc., TAM S.A., TAM Linhas Aereas S.A., Aerolinhas Brasileiras S.A., Prismah Fidelidade Ltda., Fidelidade Viagens E Turismo S.A., TP Franchising Ltda., Holdco I S.A., Multiplus Corredora De Seguros Ltda., and Piquero Leasing Limited (collectively, "<u>Appellees</u>" or the "<u>Debtors</u>"), by and through their undersigned counsel, hereby state:

1.      LATAM Airlines Group S.A. is a public corporation and identifies Delta Air Lines, Inc. as a public corporation that directly or indirectly owns 10% or more of its stock.

2.      LATAM Airlines Group S.A. is the parent corporation of Holdco I S.A., Inversiones Lan S.A., Lan Cargo S.A., Lan Pax Group S.A.,  LATAM Finance Ltd., LATAM Travel Chile II S.A., Peuco Finance Ltd., Piquero Leasing Limited, Professional Airline Services, Inc., TAM S.A.,[1] and Technical Training LATAM S.A.

3.      Inversiones Aéreas S.A. is the parent corporation of Latam Airlines Perú S.A.[2]

4.      Lan Cargo Inversiones S.A. is the parent corporation of Línea Aérea Carguera de Colombia S.A.[3]

5.      Lan Cargo Overseas Ltd. is the parent corporation of Mas Investment Ltd.

6.      Lan Cargo Repair Station, LLC is the parent corporation of Maintenance Service Experts, LLC and Professional Airline Maintenance Services LLC.

---

[1]      LATAM Airlines Group S.A. owns a majority of TAM S.A.'s stock.
[2]      Inversiones Aéreas S.A. owns a majority of Latam Airlines Perú S.A.'s stock.
[3]      Lan Cargo Inversiones S.A. owns a majority of Línea Aérea Carguera de Colombia S.A.'s stock.

7.     Lan Cargo S.A. is the parent corporation of Connecta Corporation, Fast Air Almacenes de Carga S.A., Lan Cargo Inversiones S.A., Lan Cargo Overseas Ltd., Prime Airport Services Inc., and Transporte Aéreo S.A.[4]

8.     Lan Pax Group S.A. is the parent corporation of Holdco Colombia I SpA, Holdco Colombia II SpA, Holdco Ecuador S.A.,[5] and LATAM Airlines Ecuador S.A.[6]

9.     Línea Aérea Carguera de Colombia S.A. is the parent corporation of Inversiones Aéreas S.A.[7]

10.    Prime Airport Services, Inc. is the parent corporation of Lan Cargo Repair Station LLC.

11.    Professional Airline Services, Inc. is the parent corporation of Cargo Handling Airport Services, LLC and Professional Airline Cargo Services, LLC.

12.    TAM Linhas Aereas S.A. is the parent corporation of Fidelidade Viagens e Turismo S.A., Multiplus Corredora de Seguros Ltda., and Prismah Fidelidade Ltda.

---

[4]     Lan Cargo S.A. owns a majority of Transporte Aéreo S.A.'s stock.
[5]     Lan Pax Group S.A. owns a majority of Holdco Ecuador S.A.'s stock.
[6]     Lan Pax Group S.A. owns a majority of LATAM Ecuador Airlines S.A.
[7]     Línea Aérea Carguera de Colombia S.A. owns a majority of Inversiones Aéreas S.A.'s stock.

CASE HEADER

13.     TAM S.A. is the parent corporation of TAM Linhas Aéreas S.A. and TP Franchising Ltda.

14.     Holdco Colombia I SpA and Holdco Colombia II SpA are both parent corporations of Aerovías de Integración Regional S.A.[8]

15.     Holdco I S.A., Inversiones Aéreas S.A., Inversiones Lan S.A., Lan Cargo S.A., Lan Pax Group S.A., Latam Airlines Perú S.A., LATAM Finance Ltd., LATAM Travel Chile II S.A., Peuco Finance Ltd., Piquero Leasing Limited, Professional Airline Services, Inc., TAM S.A., and Technical Training LATAM S.A. identify LATAM Airlines Group S.A. as a public corporation that directly or indirectly owns 10% or more of their stock.

---

[8]     Holdco Colombia I SpA and Holdco Colombia II SpA split majority ownership of Aerovías de Integración Regional S.A.'s stock.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................ 1

COUNTERSTATEMENT OF THE ISSUES .................................. 7

STANDARD OF REVIEW ............................................... 8

STATEMENT OF THE CASE ............................................ 9

I.    The LATAM Bankruptcy And TLA's
      Financial Condition ........................................ 9

II.   The TLA Claimholders' Objection ............................ 10

III.  The Bankruptcy Court Rulings ............................... 13

SUMMARY OF ARGUMENT .............................................. 15

ARGUMENT ......................................................... 18

I.    The TLA Claimholders Cannot Obtain Reversal Of The
      Decision Below Based On Their New Arguments That
      Were Not Presented Below ................................... 18

II.   Each Of The TLA Claimholders' Arguments In Support
      Of Their New Position Is Itself New And Meritless .......... 20

      A.    The Argument That Section 1124(1) Requires All
            Debtors To Pay All Creditors PPI Or Deem Them
            Impaired Is New And Meritless ........................ 20

      B.    The Argument That The Repeal of Section 1124(3)
            Was Not Addressed To The Solvent Debtor
            Exception Is New And Meritless ....................... 28

      C.    The Argument Based On Section 1124(2) Is New
            And Meritless ........................................ 30

**TABLE OF CONTENTS**
**(Continued)**

**Page**

D.    The Argument That Section 502(b)(2) Does Not
      Disallow Post-Petition Interest Is New And
      Meritless ....................................................................... 32

E.    The Argument That The Absolute Priority Rule
      Requires An Insolvent Debtor To Pay PPI Is New
      And Meritless ................................................................ 33

F.    The TLA Claimholders' Other Miscellaneous
      Arguments Are Likewise New And Meritless .......................... 38

III.  The Bankruptcy Court Plainly Did Not Err In Finding
      That The TLA Claimholders Did Not Establish That
      TLA Is Solvent And That The Debtors Affirmatively
      Established That TLA Is Insolvent ....................................... 41

IV.   The Bankruptcy Court Did Not Err In Finding That, Even
      If The TLA Claimholders Could Establish That TLA
      Was Insolvent, Equity Would Not Support Their Claim
      For PPI At The Contract Rate ............................................. 49

V.    The Bankruptcy Court Correctly Found That, Even If
      The TLA Claimholders Had Established A Right To PPI,
      It Would Be Calculated At The Federal Judgment Rate ...................... 50

CONCLUSION ................................................................... 52

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adelphia Bus. Solutions., Inc. v. Abnos,*
    482 F.3d 602 (2d Cir. 2007) ....................................................................... 9

*Am. Iron and Steel Mfg. Co. v. Seabord Air Line Ry.,*
    233 U.S. 261 (1914)................................................................................... 37

*Assocs. Com. Corp. v. Rash,*
    520 U.S. 952 (1997)................................................................................... 44

*Beecher v. Leavenworth State Bank,*
    192 F.2d 10 (9th Cir. 1951) ....................................................................... 38

*Bromley v. Goodere,*
    1 Atkyns 75 (1743) .................................................................................... 37

*Brown v. Leo,*
    34 F.2d 127 (2d Cir. 1929) ........................................................................ 37

*Consol. Rock Prod. Co. v. Du Bois,*
    312 U.S. 510 (1941)............................................................................. 36, 44

*Debentures Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.,*
    679 F.2d 264 (1st Cir. 1982)...................................................................... 37

*Ex parte Clarke,*
    4 Ves. Jr. 677 (1799)................................................................................. 37

*Ex parte Mills,*
    2 Ves. Jr. 296 (1793)................................................................................. 37

*In re 53 Stanhope LLC,*
    625 B.R. 573 (Bankr. S.D.N.Y. 2021)................................................. 19, 30

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Am. Media, Inc.*,
  Case No. 10-16140-MG (Bankr. S.D.N.Y. Dec. 20, 2010)....................... 28

*In re Am. Solar King Corp.*,
  90 B.R. 808 (W.D. Tex. 1988) .................................................... 26

*In re Ames Dept. Stores, Inc.*,
  506 F. App'x 70 (2d Cir. 2012) ................................................. 42

*In re Bally Total Fitness of Greater N.Y., Inc.*,
  Case No. 07-12395-BRL (Bankr. S.D.N.Y. Sept. 17, 2007)..................... 28

*In re Charter Commc'n*,
  419 B.R. 221 (Bankr. S.D.N.Y. 2009)......................................... 26

*In re CIL Ltd.*,
  582 B.R. 46 (Bankr. S.D.N.Y. 2018)........................................... 42

*In re Die Fliedermaus LLC*,
  323 B.R. 101 (Bankr. S.D.N.Y. 2005)......................................... 42

*In re Dow Corning*,
  456 F.3d 668 (6th Cir. 2006) .................................................. 51

*In re Dvorkin Holdings, LLC*,
  547 B.R. 880 (N.D. Ill. 2016) .............................................. 26, 51

*In re Energy Future Holdings*,
  540 B.R. 109 (D. Del. 2015 ................................................ 30, 33, 37

*In re Fast*,
  318 B.R. 183 (Bankr. D. Colo. 2004)......................................... 51

*In re Hertz Corp.*,
  637 B.R. 781 (Bankr. D. Del. 2021)...................................... 30, 33, 37

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Hertz Corp.*,
No. 20-11218, 2021 WL 6068390 (Bankr. D. Del. Dec. 22, 2021) .......... 25

*In re Ion Media Networks, Inc.*,
419 B.R. 585 (Bankr. S.D.N.Y. 2009)......................................... 35

*In re Markus*,
620 B.R. 31 (S.D.N.Y. Sept. 30, 2020) ..................................... 19

*In re Maxcom USA Telecom, Inc.*,
Case No. 19-23489 (Bankr. S.D.N.Y. Sept. 23, 2019)............................ 27

*In re Monclova Care Ctr.*,
59 F. App'x 660 (6th Cir. 2003) ............................................ 26, 40, 41

*In re MPM Silicones, LLC*,
531 B.R. 321 (S.D.N.Y. 2015), *rev'd on other grounds In re Matter of MPM
Silicones, L.L.C.*, 874 F.3d 787 (2d Cir. 2017)......................................... 36

*In re New Valley Corp.*,
168 B.R. 73 (Bankr. D.N.J. 1994) ............................................ 28, 29

*In re Nortel Networks Corp. Secs. Litig.*,
539 F.3d 129 (2d Cir. 2008) .................................................... 18

*In re PPI Enters.*,
228 B.R. 339 (Bankr. D. Del. 1998),
*aff'd* 324 F.3d 197 (3d Cir. 2003) ....................................... 36

*In re PPI Enters. (U.S.), Inc.*,
324 F.3d 197 (3d Cir. 2003) ................................................ 25, 27, 29, 36

*In re PG&E Corp.*,
610 B.R. 308 (Bankr. N.D. Cal. 2019) ....................................... 37

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Prudential Energy Co.*,
  58 B.R. 857 (Bankr. S.D.N.Y. 1986)..........................................................  48

*In re RAMZ Real Est. Co.*,
  510 B.R. 712 (Bankr. S.D.N.Y. 2014)........................................................  25

*In re Roblin Indus., Inc.*,
  78 F.3d 30 (2d Cir. 1996) ...........................................................  *passim*

*In re SunEdison*,
  556 B.R. 94 (Bankr. S.D.N.Y. 2016) ...........................................  42, 43, 44

*In re Taddeo*,
  685 F.2d 24 (2d Cir. 1982) .......................................................  26

*In re TerreStar Corp.*,
  No. 13 Civ. 562(GBD), 2013 WL 4477037
  (S.D.N.Y. Aug. 16, 2013) ..............................................................  19

*In re U.S. Lines, Inc.*,
  199 B.R. 476 (Bankr. S.D.N.Y. 1996)........................................................  33

*In re Ultra Petroleum Corp.*,
  943 F.3d 758 (5th Cir. 2019)...........................................................  25, 40

*In re W.R. Grace & Co.*,
  475 B.R. 34 (D. Del. 2012)........................................................  35

*In re Worldcom*,
  No. 07 Civ 3408 DLC, 2007 WL 2682882
  (S.D.N.Y. Sept. 14, 2007)...........................................................  18

*Int'l Asset Recovery Corp. v. Thomson McKinnon Sec. Inc.*,
  335 B.R. 520 (S.D.N.Y. 2005) .................................................  33

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Kitrosser v. CIT Grp./Factoring, Inc.*,
    177 B.R. 458 (S.D.N.Y. 1995) .................................................................. 33, 39

*Littleton v. Kincaid*,
    179 F.2d 848 ............................................................................................. 38

*Matter of Beverly Hills Bancorp.*,
    752 F.2d 1334 (9th Cir. 1951) .................................................................. 38

*Miles Corp. v. Lindel*,
    107 F.2d 729 (8th Cir. 1939) .................................................................... 38

*Ruskin v. Griffiths*,
    269 F.2d 827 (2d Cir. 1959) ...................................................................... 11, 37

*Stanbury v. Mukasey*,
    271 F. App'x 14 (2d Cir. 2008) ................................................................ 19

*Tolbert v. Queens Coll.*,
    242 F.3d 58 (2d Cir. 2001) ........................................................................ 19

*Travelers Casualty & Surety Co. of Am. v. Pac. Gas & Elec. Co.*,
    549 U.S. 443 (2007) .................................................................................. 26

*United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs, Ltd.*,
    484 U.S. 365 (1988) .................................................................................. 33

*Wolkowitz v. Am. Rsch. Corp.*,
    170 F.3d 1197 (9th Cir. 1999) .................................................................. 45, 46

## Rules and Statutes

11 U.S.C. § 101(32)(A) ..................................................................................... 42

11 U.S.C. § 502(b) ............................................................................................ 25, 40, 41

11 U.S.C. § 726 ................................................................................................. 39

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

11 U.S.C. § 1124(2) ...................................................................... 26, 30, 31

11 U.S.C. § 1129(b)(2)(B)(i) ............................................................ 38

28 U.S.C. § 1961 ............................................................................ 50

## **Other Authorities**

H.R. Rep. No. 103–835 (1994) ........................................................ 29

H.R. Rep. No. 103-835 (1994) ........................................................ 29

Appellees LATAM Airlines Group S.A. ("LATAM Parent"), TAM Linhas Aéreas S.A., and certain of their affiliated debtors and debtors-in-possession (collectively, the "Appellees" or the "Debtors")[1] respectfully submit this brief in response to the opening brief (the "Br.") submitted by the TLA Claimholders Group, ECF No. 14.

## INTRODUCTION

The TLA Claimholders cannot succeed in appealing the Bankruptcy Court's order confirming the Debtors' Plan, A1302-A1435 ("Confirmation Decision"), because the Bankruptcy Court rejected their objection to confirmation of the Plan based on factual findings that were fully grounded in the evidentiary record and applicable law and subject to deferential review under the clearly erroneous standard. Evidently recognizing this, and with new counsel that was not involved in

---

[1]    The Appellees and Debtors also include Lan Cargo S.A., Transporte Aereo S.A., Inversiones Lan S.A., Technical Training LATAM S.A., LATAM Travel Chile II S.A., Lan Pax Group S.A., Fast Air Almacenes De Carga S.A., Linea Aerea Carguera De Colombia SA, Aerovias De Integracion Regional S.A., LATAM Finance LTD, LATAM Airlines Ecuador S.A., Professional Airline Cargo Services, LLC, Cargo Handling Airport Services, LLC, Maintenance Service Experts, LLC, Lan Cargo Repair Station LLC, Prime Airport Services Inc., Professional Airline Maintenance Services, LLC, Connecta Corporation, Peuco Finance Ltd., Latam Airlines Peru S.A., Inversiones Aereas S.A., Holdco Colombia II Spa, Holdco Colombia I Spa, Holdco Ecuador S.A., Lan Cargo Inversiones S.A., Lan Cargo Overseas Ltd, Mas Investment Ltd., Professional Airline Services Inc., TAM S.A., Aerolinhas Brasileiras S.A., Prismah Fidelidade Ltda., Fidelidade Viagens E Turismo S.A., TP Franchising Ltda., Holdco I S.A., Multiplus Corredora De Seguros Ltda., and Piquero Leasing Limited.

the bankruptcy proceedings, they now seek to rewrite the record of those proceedings and conjure new arguments in pursuit of their appeal.

The TLA Claimholders' objection to confirmation of the Plan was predicated on the factual assertion that the debtor entity their claim is against, TAM Linhas Aéreas S.A. ("TLA"), is solvent.  Seeking to overcome section 502(b)(2)'s express disallowance of post-petition interest ("PPI"), they invoked the so-called "solvent debtor" exception to contend that, if TLA is solvent, its unsecured creditors must be paid PPI or else be treated as impaired and entitled to attempt to block the Plan by voting against it.  *See* A95-A125 ("Objection"); *see also* A1282-A1301 ("DS Objection") (same).

As their Objection puts it, "although section 502(b)(2) of the Bankruptcy Code (and pre-Code law) generally disallows unmatured interest as part of an unsecured creditor's claim, the solvent debtor exception requires that unsecured creditors of a solvent debtor receive their full contractual rights, including PPI on their claims."  A111 (Objection ¶ 29).  The TLA Claimholders thus asserted that "to unimpair an unsecured creditor of a ***solvent*** debtor, a plan must provide for the payment of PPI to the creditor."  A109 (Objection ¶ 25) (emphasis supplied); *see also* A114-A115 (Objection ¶ 33), A121 (Objection ¶ 44) (same).

As the Bankruptcy Court correctly observed, the alleged solvency of TLA was therefore the "lynchpin" of the Objection.  A1335 (Confirmation Decision).  On this

threshold factual issue, the Bankruptcy Court ruled against them across the board. A1329-A1367.  It determined that:

- The TLA Claimholders failed to satisfy their burden to establish TLA's solvency.  A1334-A1335;
- The TLA Claimholders failed even to address the proper standard for assessing solvency – that is, the standard set forth in the Bankruptcy Code.  A1347-A1352;
- Even apart from failing to address the right standard, the evidence the TLA Claimholders presented could not serve to establish that TLA is solvent.  A1343-A1344; and
- Even though it was not their burden, the Debtors affirmatively demonstrated that TLA is insolvent.  A1347-A1352.

The Second Circuit has explained that a bankruptcy court's assessment of evidence concerning insolvency – a matter uniquely within the expertise of such courts – is to be reviewed with special deference.  "The Bankruptcy Court has broad discretion when considering evidence to support a finding of insolvency.  Insolvency is a question of fact, and the findings of the Bankruptcy Court in this regard will not be disturbed unless they are clearly erroneous."  *See In re Roblin Indus., Inc.*, 78 F.3d 30, 35 (2d Cir. 1996) (citations omitted).

The TLA Claimholders evidently recognize that they cannot succeed in appealing the Bankruptcy Court's factual findings rejecting their solvent debtor claim and so their new tactic is to re-cast their Objection as not actually premised on TLA's alleged solvency.  In the Bankruptcy Court, as noted, they asserted that "to unimpair an unsecured creditor of a ***solvent*** debtor, a plan must provide for the payment of PPI to the creditor."  A109 (Objection ¶ 25) (emphasis supplied).  But

3

they now contend that despite section 502(b)(2)'s express disallowance of PPI, *all* creditors of *all* debtors – solvent or insolvent – must *always* be paid PPI or else they must be deemed impaired.  Br. at 41-43.

The TLA Claimholders' ploy fails at the threshold because these new arguments were not presented below, as the Bankruptcy Court rightly ruled in rejecting their request to certify their appeal to the Second Circuit:

> The Court finds that the TLA Claimholders did not contend in their Plan objection that unsecured creditors were entitled to contract-rate PPI to become unimpaired as a matter of law.  Instead, they contended that TLA was solvent and the solvent debtor exception operated through section 1124(1) of the Bankruptcy Code.  *See* Confirmation Opinion at 42-57; TLA Claimholders Obj. ¶¶ 24, 27, 28.  Indeed, TLA's solvency has been a predicate for their Plan objection since they contended the Disclosure Statement was deficient. Disclosure Statement Objection ¶¶ 23-29.  As such, the Court finds there is no basis for an appellate court to consider whether the TLA [Claimholders] must be paid PPI to be rendered unimpaired outside of the context of TLA's solvency – the only basis in which they raised this issue in their Plan objection.

*See Memorandum Decision and Order Denying TLA Claimholders' Motion to Certify Appeal to the Second Circuit*, A1790-A1823 (the "Certification Decision") at A1808-A1809.  The TLA Claimholders plainly cannot obtain reversal of the decision below based on arguments they did not present below.[2]

Even if their newly-minted arguments were not barred, they could not possibly succeed.  The TLA Claimholders do not cite any authority that holds that

---

[2]    As a reflection of how drastically the TLA Claimholders seek to recast their argument, more than seventy percent of the cases cited in their appeal brief – 40 out of 55 – were not cited in their Objection below.

unsecured creditors of an insolvent debtor must be paid PPI or else be deemed impaired. This is unsurprising. To require all debtors – solvent and insolvent – to pay PPI in order to avoid impairment would directly contradict and eviscerate section 502(b)'s disallowance of PPI. As the TLA Claimholders have acknowledged, to classify a creditor as impaired "puts it in a powerful bargaining position in that the debtor is incentivized to negotiate treatment that yields its vote in favor of the plan." *Request of the TLA Claimholders Group to Certify Appeal to United States Court of Appeals for the Second Circuit*, A1436-A1757 ("Request") at A1454. If all creditors of all debtors were deemed impaired unless paid PPI, they could use their "powerful bargaining position" to argue that debtors must pay PPI in every case – thus rendering section 502(b)'s disallowance of PPI a nullity. This plainly is not the law, as reflected by the consistent case law rejecting such arguments.

The TLA Claimholders fare no better with their fallback argument that, assuming solvency is a necessary predicate to their claim, the Bankruptcy Court purportedly applied an incorrect valuation standard in assessing solvency. Br. at 49-50. The Bankruptcy Court correctly applied the standard set forth in section 101(32) of the Bankruptcy Code, which the TLA Claimholders themselves acknowledged is the right standard. A1330 (Confirmation Decision); A110 (Objection ¶ 27). The Bankruptcy Court found the TLA Claimholders' evidence failed to address the

proper test.  A1342-A1347.  Further, adopting the TLA Claimholders' proposed test would not matter, because the Bankruptcy Court determined that the TLA Claimholders' evidence simply was not probative of TLA's current financial status and that their arguments failed to acknowledge the actual amount of TLA's liabilities.  A1343-A1347.  Still further, the Bankruptcy Court found that, though it was not their burden, the Debtors established that TLA was insolvent under the appropriate test for solvency.  A1347-A1352.  The TLA Claimholders thus cannot establish any basis for a remand to the Bankruptcy Court for review of the evidence under their proposed alternative standard for solvency (the most they could hope to achieve through this appeal).

Moreover, the Bankruptcy Court properly found that even if the TLA Claimholders had established that TLA was solvent, their claim for nearly $150 million in PPI would be rejected based on equitable considerations – a point their appellate brief does not address, let alone overcome.  *See* A1366 (Confirmation Decision); *see also Bench Memorandum and Order Denying the TLA Claimholders' Motion for a Stay*, A1758-A1789 ("Stay Decision") at A1780.

Finally, the TLA Claimholders challenge the Bankruptcy Court's determination that, if they had established a right to PPI, such interest would be set at the federal judgment rate (which would amount to less than $3 million) rather than their claimed contract and default rates (which would amount to approximately $150

6

million).   Br. at 63.   The Court need not reach this issue, because the TLA Claimholders plainly cannot establish a right to PPI.  But even if the Court were to address the issue, it should affirm the Bankruptcy Court's well-founded decision as to the rate that would apply.  *See* A1355-A1367 (Confirmation Decision).

## COUNTERSTATEMENT OF THE ISSUES

(1)    Whether the TLA Claimholders' first two issues presented are barred because they were not presented below;

(2)    Whether, in the alternative, even if these new arguments could be considered on appeal, they would fail on the merits;

(3)    Whether the TLA Claimholders' argument that the Bankruptcy Court used an incorrect standard in assessing whether TLA is solvent should be rejected, given that the Bankruptcy Court applied the Bankruptcy Code's standard, which the TLA Claimholders themselves identified as the proper standard; and, moreover, the Bankruptcy Court found as a factual matter that the TLA Claimholders' proffered evidence could not establish TLA's solvency because it failed to address TLA's current financial condition and also ignored the full amount of TLA's liabilities;

(4)    Whether, even if the TLA Claimholders had established that TLA is solvent in order to warrant PPI under the so-called solvent-debtor exception, the Bankruptcy Court acted within its authority to rule that equity would bar the TLA Claimholders' claim for approximately $150 million in PPI at contract and default

rates, because such an award would harm other creditors and imperil the Plan itself; and

(5)     Whether, if any PPI were to be awarded, it would be at the federal judgment rate.

## STANDARD OF REVIEW

The Bankruptcy Court's determination of whether TLA is solvent or insolvent, which is the threshold issue for any proper appeal by the TLA Claimholders, "is a question of fact, and the findings of the Bankruptcy Court in this regard will not be disturbed unless they are clearly erroneous." *In re Roblin Indus., Inc.,* 78 F.3d at 35   (citations omitted); *see id.* (further explaining that "[t]he Bankruptcy Court has broad discretion when considering evidence to support a finding of insolvency").

Even if the TLA Claimholders hypothetically could satisfy the threshold element of their claim for PPI by demonstrating that TLA is solvent, the Bankruptcy Court's additional rejection of the claim for PPI, based on the determination that equitable considerations would not support it, would be reviewed with deference under an abuse of discretion standard. *Adelphia Bus. Solutions., Inc. v. Abnos*, 482 F.3d 602, 607 (2d Cir. 2007) ("[W]e review the exercise of [a bankruptcy court's] equitable authority only for abuse of discretion.").

8

## STATEMENT OF THE CASE

### I.     The LATAM Bankruptcy And TLA's Financial Condition

The Debtors collectively operate as LATAM Airlines, a multi-entity enterprise operating as a unified platform that, before the advent of COVID-19, had been Latin America's leading airline group and one of the largest airlines in the world.  But the devastating impact of the pandemic forced the Debtors to initiate chapter 11 proceedings under Title 11 of the United States Code, 11 U.S.C. § 101 et. seq., on May 26, 2020, July 7, 2020, and July 9, 2020 in the Bankruptcy Court.

The relevant debtor for the TLA Claimholders' claim is TLA, which is incorporated in Brazil.  While TLA and certain other subsidiaries were not included in the initial Chapter 11 filing of LATAM Parent, it became evident that TLA could not continue operating without the protection of Chapter 11 and the benefit of the debtor-in-possession ("DIP") financing that LATAM Parent had obtained.  A1220-A1281 (Debtors' Ex. 25) at A1230, A1232-A1233.  In fact, a "going concern" report provided by TLA to its auditors in July 2020 made clear that TLA was operating at a substantial loss and confronting an increasingly negative financial condition and that, in order to survive as a going concern, it needed the DIP financing that LATAM Parent was arranging under the protection of Chapter 11.  A1824-A1841 (Hearing

Ex. 33).[3]

As the Bankruptcy Court determined based on a thorough review of the extensive evidence presented in connection with the hearing to address confirmation of the Plan, TLA is plainly insolvent.  A1335-A1352 (Confirmation Decision).

## II.    The TLA Claimholders' Objection

The TLA Claimholders hold claims amounting to approximately $300 million that they purchased from Brazilian banks that had extended loans to TLA.  A104 (Objection ¶ 9).  Seeking to increase their recovery by more than fifty percent, the TLA Claimholders have sought to recover an additional amount of approximately $150 million in PPI, based largely on default rates triggered by the bankruptcy itself, relying on the so-called "solvent debtor" exception to the statutory prohibition against PPI.

The TLA Claimholders are the only unsecured creditors of TLA to pursue such a claim.  And apart from one other group, they are the only parties-in-interest that continue to challenge the Plan on appeal.  All other stakeholders – including the Debtors, the Unsecured Creditors Committee and other creditors – have worked hard to formulate a Plan that provides the best possible outcome for creditors and enables

---

[3]    In part, because nearly all of the aircraft used by TLA were under a short-term lease from LATAM Parent, rather than owned or held under a long-term lease, TLA lacked the kind of "hard" assets that likely would be needed to obtain financing on its own.  A1367 n. 55 (Confirmation Decision); A2087 (Edgar Rebuttal Decl. ¶ 22).

the Debtors to emerge from Chapter 11 and that, as the Bankruptcy Court observed, "represents a delicate, intricate, and integrated compromise of myriad claims, arguments, and rights."  A1366 (Confirmation Decision).

In asserting their claim for PPI, the TLA Claimholders expressly acknowledged that section 502(b)(2) "disallows unmatured interest as part of an unsecured creditor's claim[.]"  *See* A111 (Objection ¶ 29).  But they sought to overcome this statutory bar by invoking the so-called "solvent debtor" exception: they asserted that "although section 502(b)(2) of the Bankruptcy Code (and pre-Code law) generally disallows unmatured interest as part of an unsecured creditor's claim, the solvent debtor exception requires that unsecured creditors of a solvent debtor receive their full contractual rights, including PPI on their claims."  A111 (Objection ¶ 29) (citing *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959) and *Sword Line, Inc. v. Indus. Comm'r of N.Y.*, 212 F.2d 865, 870 (2d Cir. 1954) ("[I]nterest ceases upon bankruptcy in the general and usual instances noted and unless the bankruptcy bar proves eventually nonexistent by reason of the actual solvency of the debtor.")).

Thus, with respect to impairment, the TLA Claimholders asserted that "to unimpair an unsecured creditor of a ***solvent*** debtor, a plan must provide for the payment of PPI to the creditor."  A109 (Objection ¶ 25) (emphasis supplied).  Their Objection repeatedly and consistently presented their claim on the premise of TLA

being solvent: "Absent payment of PPI . . . , the legal, equitable, and contractual rights of unsecured creditors of a ***solvent*** debtor do not remain unaltered by a plan." A109 (Objection) (emphasis supplied); *see also* A121 (Objection ¶ 44) ("[T]his Court, consistent with Second Circuit precedent, should find that ***because TLA is solvent***, the TLA Claims cannot be unimpaired without payment of the PPI[.]") (emphasis supplied); A114-A115 (Objection ¶ 33) ("[H]olders of unsecured claims of ***solvent*** debtors [must] receive PPI on their claims at the applicable contract rate in order to be unimpaired.") (emphasis supplied).

Their objection to the Disclosure Statement further confirms that the entire premise of the TLA Claimholders' argument that unsecured creditors must be paid PPI to render them unimpaired was the supposed solvency of the debtor. *See* A1292-A1293 ("[W]hile section 502(b)(2) of the Bankruptcy Code disallows unmatured interest as part of an unsecured creditor's claim, the solvent debtor exception requires that unsecured creditors of a solvent debtor receive their full contractual rights, including postpetition interest on their claims."); A1295 (¶ 27) ("While the Bankruptcy Code is silent as to an unimpaired unsecured creditor's right to postpetition interest, the solvent debtor exception fills in the gaps."); A1295(¶ 28) ("[A]s a result of the solvent debtor exception . . . postpetition interest must be paid

on the TLA Claims to render them unimpaired.").[4]

## III.   The Bankruptcy Court Rulings

As the Bankruptcy Court observed, the "lynchpin" of the TLA Claimholders'
Objection was their assertion that TLA is solvent.  A1335 (Confirmation Decision).
The Bankruptcy Court summarized their argument as follows: "The TLA
Claimholders contend that TLA is solvent.  They maintain that under the Bankruptcy
Code to leave a class of unsecured creditors unimpaired under a plan of a solvent
debtor, the plan must provide for the payment of principal in full, plus PPI, to those
creditors."  A1330 (Confirmation Decision) (citing A101-A102 (¶¶ 1-2)).

On the factual threshold question of whether TLA is solvent, the Court
carefully considered the extensive evidence and made the factual findings
summarized above in Section I.  The Bankruptcy Court thus ruled against the TLA
Claimholders across the board, finding that:

- The TLA Claimholders bore the burden to establish TLA's solvency
  and they failed to satisfy that burden.  A1334-A1335.

- The TLA Claimholders failed to address the proper standard for
  assessing solvency – that is, the standard set forth in the Code.  A1347-
  A1352.

- Even apart from failing to address the right standard, the evidence that
  the TLA Claimholders presented, principally through their expert,

---

[4]     The TLA Claimholders disingenuously assert that they argued solvency only
"[t]o meet the Debtors' argument."  Br. at 13.  But in fact it was the TLA
Claimholders who first asserted that solvency was relevant to their claims.  *See*
A1286 (DS Objection ¶ 2).

could not serve to establish that TLA is solvent.  A1343-A1344.

- And, though it was not their burden to do so, the Debtors affirmatively demonstrated that TLA is insolvent.  A1347-A1352.

As the Bankruptcy Court observed in its ruling denying the TLA Claimholders' stay motion, the factual issue of TLA's solvency was "the lynchpin of the TLA Claimholders' objection.  Put differently, the crux of the objection is that the TLA Claimholders are entitled to PPI at the rate set forth in the Debt Instruments because the solvent debtor exception applies through the Bankruptcy Code in section 1124(1).  If a debtor is not solvent, there is no need to consider or apply the solvent debtor exception whatsoever and, in turn, no need to assess section 1124(1)."  A1780 (Stay Decision).

After filing their notice of appeal, the TLA Claimholders requested that the Bankruptcy Court certify their appeal to the Second Circuit.  *See generally* A1436-A1757.  In a thorough 34-page decision, the Bankruptcy Court rejected the request based principally on its finding that the TLA Claimholders' proposed appellate arguments were not presented in that court so as to make them proper grounds for appeal.  *See* A1808-A1809.

The Bankruptcy Court observed that "at each juncture of these Chapter 11 Cases, the TLA Claimholders' arguments in opposition to the Plan were predicated on the Court finding that TLA was solvent and, in turn, that the solvent debtor exception justified awarding PPI to the TLA [unsecured creditors] at the contract

rate." A1800 (Certification Decision). It thus found as follows:

> [T]he TLA Claimholders did not contend in their Plan objection that unsecured creditors were entitled to contract-rate PPI to become unimpaired as a matter of law. Instead, they contended that TLA was solvent and the solvent debtor exception operated through section 1124(1) of the Bankruptcy Code. *See* Confirmation Opinion at 42-57; TLA Claimholders Obj. ¶¶ 24, 27, 28. Indeed, TLA's solvency has been a predicate for their Plan objection since they contended the Disclosure Statement was deficient. Disclosure Statement Objection ¶¶ 23-29. As such, the Court finds there is no basis for an appellate court to consider whether the TLA [Claimholders] must be paid PPI to be rendered unimpaired outside of the context of TLA's solvency – the only basis in which they raised this issue in their Plan objection.

*Id.* The Bankruptcy Court further found that, even if these new arguments could be considered, they would lack merit. *See, e.g.*, *id.* at A1810-A1817 (Certification Decision).

## **SUMMARY OF ARGUMENT**

The TLA Claimholders' new arguments that do not depend on the alleged solvency of TLA – including for example their contentions that, despite section 502(b)(2)'s ban on PPI, all debtors must pay PPI to unsecured creditors or else deem them impaired and that the absolute priority rule requires TLA to pay PPI even though it is insolvent – cannot serve as the basis for their appeal because these arguments were not presented, and certainly were not adequately presented, in the TLA Claimholders' Objection below. *See* A1796-1804; A1808-A1809 (Certification Decision).

This Court need not address these new arguments, because they are barred;

but even if it did address them, they would fail.  As the TLA Claimholders themselves asserted below, "section 502(b)(2) of the Bankruptcy Code (and pre-Code law) generally disallows unmatured interest [*i.e.*, PPI] as part of an unsecured creditor's claim[.]"  A111 (Objection ¶ 29); *see also* A1292-A1293 (DS Objection ¶ 24) (asserting that "section 502(b)(2) of the Bankruptcy Code disallows unmatured interest as part of an unsecured creditor's claim").  Thus, as the TLA Claimholders explained, it is only by invoking and establishing "the solvent debtor exception" that they could claim they are entitled to receive "PPI on their claims."  A111 (Objection ¶ 29).  Under their own theory, they could claim to be impaired if they do not receive PPI only if TLA were found to be solvent.  A109 (Objection ¶ 25) (asserting that "to unimpair an unsecured creditor of a ***solvent*** debtor, a plan must provide for the payment of PPI to the creditor.") (emphasis supplied); *see also* A114-A115 (Objection ¶ 33), A121 (Objection ¶ 44) (same).

On the question of whether TLA is in fact solvent, the TLA Claimholders' argument that the Bankruptcy Court purportedly applied an incorrect valuation standard in assessing solvency is meritless.  The Bankruptcy Court correctly applied the standard set forth in section 101(32) of the Bankruptcy Code, which the TLA Claimholders themselves acknowledged is the right standard.  The Bankruptcy Court found the TLA Claimholders' evidence failed to address the proper test.  Further, adopting the TLA Claimholders' proposed test would not matter, because the

Bankruptcy Court determined that the TLA Claimholders' evidence was not probative of TLA's current financial status and their arguments failed to acknowledge the actual amount of TLA's liabilities. Still further, the Bankruptcy Court found that, though it was not their burden, the Debtors established that TLA was insolvent under the appropriate test for solvency. A1347-A1352 (Confirmation Decision). The Bankruptcy Court's findings as to solvency are reviewed for clear error and with deference to its "broad discretion when considering evidence to support a finding of insolvency;" and the TLA Claimholders plainly cannot establish any proper basis to disturb its findings. *In re Roblin Indus., Inc.,* 78 F.3d at 35.

The Bankruptcy Court also properly found that even if the TLA Claimholders had established that TLA was solvent, their claim for nearly $150 million in PPI would be rejected based on equitable considerations. A1366 (Confirmation Decision); A1780 (Stay Decision). This finding serves as an independent basis for rejecting the TLA Claimholders' claim for PPI. The TLA Claimholders have not addressed it, let alone demonstrated that it was an abuse of discretion.

Finally, the TLA Claimholders challenge the Bankruptcy Court's determination that, if they had established a right to PPI, such interest would be set at the federal judgment rate rather than their claimed contract and default rates need not be addressed because the TLA Claimholders cannot establish a right to PPI. But even if the Court were to address the issue, it should affirm the Bankruptcy Court's

well-founded decision as to the rate that would apply.

## ARGUMENT

### I.    The TLA Claimholders Cannot Obtain Reversal Of The Decision Below Based On Their New Arguments That Were Not Presented Below

The TLA Claimholders' attempt to fashion new arguments on appeal that do not depend on the alleged solvency of TLA should be rejected at the threshold. As the Bankruptcy Court rightly found, because "the TLA Claimholders did not contend in their Plan objection that unsecured creditors were entitled to contract-rate PPI to become unimpaired as a matter of law" but instead "they contended that TLA was solvent and the solvent debtor exception operated through section 1124(1) of the Bankruptcy Code," there is "no basis for an appellate court to consider whether the TLA [Claimholders] must be paid PPI to be rendered unimpaired outside of the context of TLA's solvency." A1800, A1808-A1809 (Certification Decision).

"It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *In re Nortel Networks Corp. Secs. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008). In order to present an argument on appeal, an appellant must have "raise[d] it *adequately* in the bankruptcy court," or else they will have "deprived the bankruptcy court of the opportunity to address it in the first instance." *In re Worldcom*, No. 07 Civ. 3408 DLC, 2007 WL 2682882, at *8 (S.D.N.Y. Sept. 14, 2007) (Cote, J.) (emphasis supplied); *see also In re TerreStar Corp.*, No. 13 Civ. 562(GBD), 2013 WL 4477037, at *7 (S.D.N.Y. Aug. 16, 2013)

("By not raising these specific issues, [appellant] did not afford the Bankruptcy Judge the opportunity to focus his attention on [these issues] prior to his ruling . . . "); *Tolbert v. Queens Coll.,* 242 F.3d 58, 75 (2d Cir. 2001) (An issue that is "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," is not adequately presented to a court for decision and therefore is waived.); *Stanbury v. Mukasey*, 271 F. App'x 14, 15 (2d Cir. 2008) (same).[5]

"Appellants cannot 'change [their] strategy on appeal'" such that the bankruptcy court will have viewed their objection under one lens and the appellate court under another.  *In re Markus*, 620 B.R. 31, 36 (S.D.N.Y. Sept. 30, 2020) (quoting *In re Campbell*, 539 B.R. 66, 74 (S.D.N.Y. Sept. 28, 2015) ("Appellant, having chosen before the bankruptcy court to rely on [a] theory . . . is not free to change that strategy on appeal.") (alteration in original)).

This is what the TLA Claimholders attempt here.  The arguments that the TLA

---

[5]      The Bankruptcy Court charitably described the TLA Claimholders' making a passing reference at the very end of the confirmation hearing to unsecured creditors being impaired if not paid PPI (A1803 (Certification Decision)), but in fact there was no clear articulation of such an argument even then.  The TLA Claimholders briefly referred to comments by Judge Drain in *Empire Generating* before conceding that he reversed his position in *In re 53 Stanhope LLC*, 625 B.R. 573, 579-80 (Bankr. S.D.N.Y. 2021), acknowledging that a creditor is not "impaired" under section 1124 by virtue of its claim being subjected subject to the "Bankruptcy Code's own limitations on claim allowance, including limitations on the allowance of postpetition interest."  *See* A1803, A1811 (Certification Decision).  As the Bankruptcy Court found, such a "perfunctory" remark did not adequately present an argument for decision, especially given that the thrust of the argument relied on the solvent debtor exception.  A1803-A1804 (Certification Decision).

Claimholders now seek to present that do not depend on the alleged solvency of TLA, including their first and second issues presented, cannot serve as a basis for demanding reversal of the Bankruptcy Court's decision because they were not presented to that court.

## II.   Each Of The TLA Claimholders' Arguments In Support Of Their New Position Is Itself New And Meritless

Beyond the fact that the TLA Claimholders' core argument on appeal – that, regardless of whether TLA is solvent, they must be paid PPI or else be deemed impaired – was not presented below and therefore is barred, each of the various arguments they offer as purported support for this position is itself new and, in any event, meritless.

### A.   The Argument That Section 1124(1) Requires All Debtors To Pay All Creditors PPI Or Deem Them Impaired Is New And Meritless

As purported support for their new "solvency is irrelevant" argument, the TLA Claimholders present an extended discussion of the concepts of "impaired" and "unimpaired" and then proclaim that section 1124(1) must be read to require that to unimpair an unsecured creditor of *any* debtor, even an insolvent one, a plan must provide for the payment of PPI to the creditor.  Br. at Argument Sections I.A, B, E.

This is not only new, but squarely inconsistent with their argument below: that "to unimpair an unsecured creditor of a *solvent* debtor, a plan must provide

for the payment of PPI to the creditor."   A109 (Objection ¶ 25) (emphasis supplied); *see also* A114 (Objection ¶ 33) ("holders of unsecured claims of solvent debtors [must] receive PPI on their claims at the applicable contract rate in order to be unimpaired"); A121 (Objection ¶ 44) ("[B]ecause TLA is solvent, the TLA Claims cannot be unimpaired without payment of [PPI]."); *see also* A1295 (DS Objection ¶ 27) (stating that "the Bankruptcy Code is silent as to an unimpaired unsecured creditor's right to postpetition interest," but that "the solvent debtor exception fills in the gaps" as to solvent debtors).

Further, the TLA Claimholders invoked the issue of impairment – that is, their assertion that unsecured creditors of a ***solvent*** debtor must receive PPI to be unimpaired – as part of an effort to shift the burden of proof as to solvency onto the Debtors.  They contended: "The Debtors have the burden at confirmation to prove, by a preponderance of the evidence, that TLA is insolvent.  Given the binding precedent discussed above [concerning the solvent debtor exception], proving that TLA is insolvent is the ***only way*** that the Debtors can even try to defend their classification of TLA Class 6 as unimpaired."  A114 (Objection ¶ 32) (emphasis in original).

The Bankruptcy Court rightly rejected the TLA Claimholders' burden-shifting argument.  A1330-A1334 (Confirmation Decision).  As the predicate for the assessment of burdens, it discussed the concept of impairment under section

21

1124(1) in connection with PPI in relation to a debtor's burdens (A1330-A1332) and went on to hold that the Debtors did not bear the burden of establishing insolvency but instead the TLA Claimholders bore the burden of establishing TLA's solvency.  A1330-A1334 (Confirmation Decision).  As relevant here, the fact that the TLA Claimholders made this burden argument demonstrates that they did not present the argument they now wish to pursue on appeal: if their theory had been that PPI must be paid to unimpair creditors regardless of whether a debtor is solvent or insolvent, there would have been no reason to argue about who has the burden as to solvency.

As still further proof that the TLA Claimholders' argument below depended on the alleged solvency of TLA, they pointed to section 1124(1) not as imposing a general obligation on all debtors to pay PPI but rather as the Code provision that provides a statutory basis for the solvent debtor exception.  Their Objection refers to section 1124(1) at paragraph 33, in which they again assert that "holders of unsecured claims of *solvent* debtors [must] receive PPI on their claims at the applicable contract rate in order to be unimpaired" and go on to state that "§ 1124 provides a means to implement the [solvent debtor] exception within the plan confirmation framework of the Bankruptcy Code."  A114 (Objection ¶ 33).  They further stated: "Courts generally recognize three different grounds for paying postpetition interest in solvent debtor cases.  Such grounds are (1) section 1124 of

the Bankruptcy Code, (2) section 1129(b) of the Bankruptcy Code, and (3) the best interests test under section 1129(a)(7).  The first ground is applicable here." *Id.* at n.8.

The TLA Claimholders' goal in seeking to place the solvent debtor exception in section 1124(1) was to set up an argument that, if indeed TLA was found to be solvent so that the solvent debtor exception applied, they could seek PPI at the contract rate.  A114-A121 (Objection ¶¶ 33-44).  If instead section 1129(a)(7) (which in turn references section 726(a)(5)) serves as the statutory basis for the solvent debtor exception, then any PPI to be awarded would be at the "legal rate" – *i.e.*, the federal judgment rate.  *Id.*  The Bankruptcy Court rejected this aspect of the TLA Claimholders' solvent debtor argument as well, explaining that, as other courts have confirmed, "the solvent debtor exception survived [the enactment of the Bankruptcy Code] through section 1129(a)(7), not section 1124(1)."  A1352-A1353; *see also* A1330-A1333; A1352-A1366 (Confirmation Decision).

Thus, when the Bankruptcy Court addressed the issue of PPI and impairment under section 1124(1), it was not addressing a standalone argument that section 1124(1) required the payment of PPI even apart from a debtor's solvency – an argument that, again, the TLA Claimholders' Objection did not make.  Rather, it was addressing the issue in the context of the TLA Claimholders'

solvency-based arguments: that the Debtors bore the burden to establish that TLA

was insolvent in order to treat its unsecured creditors as unimpaired, and that the

solvent debtor exception was properly located in section 1124(1) rather than

section 1129(a)(7).  A1330-A1334, A1352-A1353 (Confirmation Decision).  As

the Bankruptcy Court observed in its Stay Decision:

> [the alleged solvency of TLA was always] the lynchpin to the TLA
> Claimholders' objection.   Put differently, the crux of the objection is that
> the TLA Claimholders are entitled to PPI at the rate set forth in the Debt
> Instruments because the solvent debtor exception applies through the
> Bankruptcy Code in section 1124(1).  If the debtor is not solvent, there is no
> need to consider or apply the solvent debtor exception whatsoever, and in
> turn, no need to assess section 1124(1).

A1780 (Stay Decision).

In sum, as the Bankruptcy Court has ruled, "the TLA Claimholders did not

contend in their Plan objection that unsecured creditors were entitled to contract-

rate PPI to become unimpaired as a matter of law.  Instead, they contended that

TLA was solvent and the solvent debtor exception operated through section

1124(1) of the Bankruptcy Code."  A1808-A1809 (Certification Decision).  Thus,

"there is no basis for an appellate court to consider whether the TLA

[Claimholders] must be paid PPI to be rendered unimpaired outside of the context

of TLA's solvency – the only basis in which they raised this issue in their Plan

objection."  A1808-A1809; *see also* A1796-A1804 (Certification Decision).

24

Even if it were not barred, the argument is meritless.  Section 502(b) expressly disallows the recovery of PPI.  Section 1124(1) addresses whether a "plan" creates an impairment.  When a Code provision such as section 502(b)(2) disallows recovery of certain amounts, "the monolithic mountain of authority hold[s] the Code – not the reorganization plan – defines and limits the claim in these circumstances" and therefore creditors cannot claim to be "'impaired' by a plan that paid them everything allowed by the Bankruptcy Code." *In re Ultra Petroleum Corp.*, 943 F.3d 758, 760, 763, 766 (5th Cir. 2019) (collecting cases); *see also* 7 Collier on Bankruptcy ¶ 1124.03[6] (16th ed. 2022) ("Alteration of Rights by the Code Is Not Impairment under Section 1124(1)"); *In re RAMZ Real Est. Co.*, 510 B.R. 712, 717 (Bankr. S.D.N.Y. 2014) ("Where a section of the Bankruptcy Code alters a creditor's claim, that claim is not considered 'impaired' by the plan as it is not the plan, but instead the Code, that impairs its treatment."); *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 205 (3d Cir. 2003) (where "the Bankruptcy Code, not the Plan, is the only source of limitation" on a creditor's rights, the creditor's claim is not impaired); *In re Hertz Corp.*, No. 20-11218, 2021 WL 6068390, at *11 (Bankr. D. Del. Dec. 22, 2021) ("[A]ny modification of the Noteholders' claim to unmatured interest . . . is an impairment of the Noteholders' contract claims by operation of section 502(b)(2) of the Bankruptcy Code, not the Debtors' Plan.  Consequently, the Noteholders' claims are not impaired within the

meaning of section 1124(1).").  Accordingly, these claims are not impaired under

section 1124(1).  *In re Am. Solar King Corp.*, 90 B.R. 808, 819 (W.D. Tex. 1988)

("A closer inspection of the language employed in Section 1124(1) reveals

'impairment by statute' to be an oxymoron.  Impairment results from what the plan

does, not what the statute does."); *cf. Travelers Casualty & Surety Co. of Am. v.

Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007) (noting the "settled principle that

'[c]reditors' entitlements in bankruptcy'" are "subject to any qualifying or contrary

provisions of the Bankruptcy Code").[6]

     To require all debtors – solvent and insolvent – to pay PPI in order to avoid

impairment would directly contradict section 502(b)'s disallowance of PPI and

leave it void of meaning.   As the TLA Claimholders have acknowledged, to

---

[6]    The *Taddeo* decision that the TLA Claimholders cite does not address a claim
for PPI or section 502(b)(2) or even section 1124(1); nor does it address whether a
creditor can claim to be impaired based on not receiving something the code
disallows; and it certainly does not hold that a creditor must be given recovery that
the Code specifically disallows or else be deemed impaired under section 1124(1).
*See In re Taddeo*, 685 F.2d 24 (2d Cir. 1982).  The cases the TLA Claimholders cite
that purportedly do involve PPI, all of which are new, do not support their argument.
*See In re Monclova Care Ctr., Inc.*, 59 F. App'x. 660, 663-64 (6th Cir. 2003)
(addressing the IRS's statutory right to collect interest on unpaid taxes until paid and
noting that this is an exception to section 502(b)(2)'s disallowance of PPI that
applies "in most cases"); *In re Dvorkin Holdings, LLC*, 547 B.R. 880, 885, 890 (N.D.
Ill. 2016) (addressing a solvent debtor scenario and also recognizing that "[i]f the
Code – rather than just the Plan – limits interest to the Federal Judgment Rate, then
Creditor's claim is not impaired under section 1124(1)"); *In re Charter Commc'n*,
419 B.R. 221 (Bankr. S.D.N.Y. 2009) (discussing unimpaired claims specifically
under Section 1124(2)).

classify a creditor as impaired "puts it in a powerful bargaining position in that the debtor is incentivized to negotiate treatment that yields its vote in favor of the plan."  A1486.   If all creditors of all debtors (including insolvent ones) were deemed impaired unless they are paid PPI, they could use this position to argue that debtors must pay them PPI in every case – thus rendering section 502(b)'s explicit disallowance of PPI a nullity, which courts do not permit. *Cf. In re PPI Enters. (US), Inc.*, 324 F.3d at 204 (observing that to treat a creditor as impaired and entitled to vote against a plan when its recovery is capped by section 502(b)(6) would render "section 502(b)(6) a nullity").   Such an interpretation would also be contrary to the Supreme Court's directive that "bankruptcy courts avoid creating judicial exceptions that contravene express provisions of the Code."   A1361 (Confirmation Decision) (citing *Law v. Siegel*, 134 S. Ct. 1188, 1196-97 (2014)).

Unsurprisingly, bankruptcy courts routinely approve Chapter 11 plans that provide that unsecured creditors who do not receive PPI are unimpaired. *See, e.g.*, Order, *In re Maxcom USA Telecom, Inc.*, Case No. 19-23489 (Bankr. S.D.N.Y. Sept. 23, 2019), ECF No. 66 (order confirming plan denying postpetition interest while treating class of unsecured creditors as "unimpaired" at sections 3.2 and 7.4); Order, *In re Am. Media, Inc.*, Case No. 10-16140-MG (Bankr. S.D.N.Y. Dec. 20, 2010), ECF No. 123 (same with relevant plan sections at 3 and 6.16); Order, *In re Bally Total Fitness of Greater N.Y., Inc.*, Case No. 07-12395-BRL (Bankr. S.D.N.Y. Sept.

27

17, 2007), ECF No. 466 (same with relevant plan sections at 2.2 and 6.2).  The TLA

Claimholders' argument that unsecured creditors must receive PPI or be deemed

impaired, regardless of whether the debtor is solvent, is baseless.

### B.   The Argument That The Repeal Of Section 1124(3) Was Not Addressed To The Solvent Debtor Exception Is New And Meritless

The TLA Claimholders now contend that Congress's repeal of section

1124(3) in the wake of the *New Valley* decision was not addressed to the solvent

debtor exception but instead was intended to establish a general rule applicable to

*all* debtors, including insolvent ones.  Br. at 29-30.  But below, they asserted just the

opposite: that Congress repealed section 1124(3) in order to "reinforce[] the survival

of the solvent debtor exception[.]"  A113-A114 (Objection ¶ 31).  They stated as

follows:

> Congress has never clearly indicated an intent to depart from the solvent debtor exception, and has instead reinforced the survival of the solvent debtor exception by repealing section 1124(3) from the Bankruptcy Code following a controversial decision by the Bankruptcy Court for the District of New Jersey in *In re New Valley Corp.*, 168 B.R. 73 (Bankr. D.N.J. 1994).  The *New Valley* decision interpreted former section 1124(3) as allowing a solvent debtor to treat claims as unimpaired by paying only the 'allowed amount' of the claim without PPI.   In the legislative history underlying the repeal of section 1124(3), Congress clarified that not paying PPI on a claim in a solvent debtor case was 'unfair,' that, going forward, '[a]s a result of [repealing section 1124(3)], if a plan propose[s] to pay a class of claims in cash in the full allowed amount of the claims, the class would be impaired, entitling creditors to vote for or against the plan of reorganization' and that 'in order for a plan to be fair and equitable, unsecured and undersecured creditors' claims must be paid in full, including postpetition interest, before equityholders may participate in any recovery.'   H.R. Rep. No. 103–835, at 47–48 (1994); *In re PPI Enters.*, 324 F.3d at 206 (affirming the bankruptcy court's holding that in

light of Congress' repeal of section 1124(3), in order to be unimpaired, claims of a solvent debtor must receive postpetition interest); *Ultra*, 624 B.R. at 200 ('The repeal of § 1124(3) illustrates that, by adopting the Bankruptcy Code, Congress did not intend to eliminate the solvent-debtor exception.').

*Id.*

The TLA Claimholders cannot demand reversal of the decision below based on a new argument that they did not assert below – and that in fact is directly contrary to what they did assert below.  More broadly, the TLA Claimholders' argument in the Bankruptcy Court would not have focused on the repeal of section 1124(3) as preserving the solvent debtor exception if they had been pursuing the argument they now proffer on appeal, that section 1124 requires that creditors of *all* debtors – even insolvent ones – be paid PPI.  But, again, that was not the argument they presented below.

Even if this new argument were not barred, it would fail.  Just as the TLA Claimholders acknowledged, the repeal of section 1124(3) addressed the solvent debtor exception.  *New Valley* was a solvent debtor case.  *See New Valley Corp.*, 168 B.R. 73, 77 (D.N.J. 1994) (referring to the debtor as "solvent").  The legislative history of the repeal of section 1124(3) further made clear that it addressed the solvent debtor context.  *See* H.R. Rep. No. 103-835 at 48 (1994) (explaining that repealing section 1124(3) was intended to address *New Valley*'s holding, in which "unsecured creditors were denied the right to receive postpetition interest on their allowed claims even though the debtor was liquidation and reorganization solvent,"

29

and noting the requirements that will apply going forward "where an estate is solvent"). Courts that have addressed the issue have repeatedly confirmed that section 1124(3)'s repeal was addressed to the solvent debtor scenario. *See, e.g., In re Hertz Corp.*, 637 B.R. 781, 796 (Bankr. D. Del. 2021) ("[I]n its repeal of section 1124(3), Congress did express its belief that the Bankruptcy Code contained an exception in cases where the debtor is solvent to the principle that creditors are not entitled to post-petition interest."); *In re 53 Stanhope LLC*, 625 B.R. at 580 (revisiting prior comments and concluding that the repeal of section 1124(3) was addressed to the solvent debtor exception); *Ultra*, 624 B.R. at 200; *In re Energy Future Holdings*, 540 B.R. 109, 120 (D. Del.2015).

## C.    The Argument Based On Section 1124(2) Is New And Meritless

Next, the TLA Claimholders contend that their new argument is supported by consideration of section 1124(2). Br. at 26-28. But, as the Bankruptcy Court correctly ruled, this new argument concerning "the alleged conflict between the treatment of creditors who are unimpaired through section 1124(1) and those who are unimpaired through section 1124(2) [] was not raised in their Plan Objection. Accordingly, there is no basis for an appellate court to consider this question." A1809 n.19 (Certification Decision).[7]

---

[7]    Moreover, as the Bankruptcy Court observed, the TLA Claimholders' attempt to now invoke section 1124(2) in support of their new arguments is "curious," given

Even if not barred, this new argument would fail.  Section 1124(2) addresses a specific scenario in which a creditor would have a right to accelerate a debt – so that, for example, a loan for $10 million to be paid in monthly installments of $100,000 would become immediately due in full – and the debtor is given the ability to "deaccelerate" the loan by curing the default and "reinstating" it.  *See* 11 U.S.C. § 1124(2); 7 Collier on Bankruptcy § 1124.04  (16th ed. 2022).  Thus, as the Collier treatise explains:

> The advantages of section 1124(2) to the debtor are easily illustrated. If the debtor has defaulted with respect to a long-term debt obligation that has an interest rate substantially lower than the current market rate, the plan can reinstate the original maturity of the obligation and the original, lower interest rate . . . .

7 Collier on Bankruptcy § 1124.04.  The specialized scenario addressed by section 1124(2) and the conditions under which it can be exercised plainly do not speak to or alter the scope and meaning of the remainder of section 1124(1).[8]

---

that they expressly asserted below that section 1124(2) was inapplicable to their case.  A1817 (Certification Decision).

[8]     Section 1124(2) also has many more requirements for unimpairment than section 1124(1).  The TLA Claimholders' argument assumes that it is section 1124(2)(**E**) of the Code that requires payment of postpetition interest as a condition to reinstatement.  But the source of that right is more likely located in section 1124(2)(**A**), which requires a reinstatement plan to cure any defaults.

**D.    The Argument That Section 502(b)(2) Does Not Disallow Post-Petition Interest Is New And Meritless**

Evidently recognizing that the core obstacle to their claim is section 502(b)(2)'s express disallowance of PPI, the TLA Claimholders now proffer a stunningly new and meritless argument: that section 502(b)(2) does not in fact disallow PPI.  They contend that "[t]he bankruptcy court's errors originate in its misreading of section 502(b)(2) of the Code . . . as generally prohibiting payment of post-petition interest."  Br. at 4; *see also id.* at 41-43.  But below, the TLA Claimholders squarely asserted that "section 502(b)(2) of the Bankruptcy Code (and pre-Code law) generally disallows unmatured interest as part of an unsecured creditor's claim[.]"  A111 (Objection ¶ 29); *see also* A1292-A1293 (DS Objection¶ 24) (asserting that "section 502(b)(2) of the Bankruptcy Code disallows unmatured interest as part of an unsecured creditor's claim").  Indeed, the TLA Claimholders acknowledged that this rule that interest does not accrue while a bankruptcy matter is proceeding – *i.e.*, the "music stops" – is a fundamental principle that predates the Code.  A111 (Objection ¶ 29) (citing *Sword Line, Inc. v. Indus. Comm'r of N.Y.*, 212 F.2d 865, 870 (2d Cir. 1954) ("[I]nterest ceases upon bankruptcy in the general and usual instances noted and unless the bankruptcy bar proves eventually nonexistent by reason of the actual solvency of the debtor.")  For the TLA Claimholders to now criticize the Bankruptcy Court and demand reversal of its ruling based on an

32

argument that directly contradicts their own assertions below is not just meritless, but brazen.

Even if this new argument could be considered, it plainly would fail. The TLA Claimholders do not cite a single case that holds that section 502(b)(2) does not disallow PPI. To the contrary, the "rule regarding post-petition interest is clear: unsecured or under-secured creditors are not entitled to postpetition interest on a pre-petition claim." *Int'l Asset Recovery Corp. v. Thomson McKinnon Sec. Inc.*, 335 B.R. 520, 527 (S.D.N.Y. 2005); *see also* 11 U.S.C. § 502(b)(2); *Kitrosser v. CIT Grp./Factoring, Inc.*, 177 B.R. 458, 467-68 (S.D.N.Y. 1995) (Cote, J.); *In re U.S. Lines, Inc.*, 199 B.R. 476, 480-81 (Bankr. S.D.N.Y. 1996); *In re Hertz Corp.*, 637 B.R. at 793, 797-98; *In re Energy Future Holdings Corp.*, 540 B.R. at 111; 4 Collier on Bankruptcy ¶ 502.03[3][a] (16th ed. 2022).[9]

### E. The Argument That The Absolute Priority Rule Requires An Insolvent Debtor To Pay PPI Is New And Meritless

The TLA Claimholders seek to proffer the new argument that, even if TLA is insolvent, the so-called "absolute priority rule" requires it to pay PPI to unsecured creditors such as the TLA Claimholders. They made no such argument below. Rather, their only mention of the absolute priority rule appeared at the end of their

---

[9]     Any purported distinction between "unmatured" and "postpetition" interest is specious, as well. *See, e.g.*, *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs, Ltd.*, 484 U.S. 365, 373 (1988) (citing 502(b)(2) for the "general rule disallowing *postpetition* interest") (emphasis supplied).

Objection, under the heading "Cramming Down the TLA Claims is Not a Viable Alternative," and concerned a *hypothetical* scenario in which TLA had been found solvent and obligated to pay PPI: if TLA was solvent and therefore was required (according to the TLA Claimholders) to pay PPI to unsecured creditors or deem them impaired; and if the Debtors chose instead to amend the Plan to deem unsecured creditors impaired; and if the impaired creditors of TLA voted against the Plan; and if the Debtors sought to "cram down" TLA's creditors under section 1129; then, according to the TLA Claimholders, the proposed cram down purportedly would be barred for various reasons, including the absolute priority rule under section 1129(b)(2)(B).  A123-A124 (Objection ¶ 47); *see also* A123 at n.10 (Objection) (stating that this section "previews the cramdown issues" that purportedly would arise in this hypothetical scenario).

The TLA Claimholders plainly did not present the argument they now proffer: that even assuming TLA is *insolvent*, the absolute priority rule under section 1129 requires it to pay PPI to unsecured creditors.  Br. at I.A, I.D., II.C.  Again, as the Bankruptcy Court has ruled, because the only objection the TLA Claimholders presented below was predicated on TLA's alleged solvency, "there is no basis for an appellate court to consider whether the TLA [Claimholders] must be paid PPI to be rendered unimpaired outside of the context of TLA's solvency – the only basis in

which they raised this issue in their Plan objection."  A1808-A1809 (Certification Decision).

Even if this new argument could be considered on appeal, it would fail.  The new argument is circular and lacks any authority to support it.  To begin, as the TLA Claimholders acknowledge, the absolute priority rule applies only if a class of creditors is impaired, votes against a plan, and faces a proposed cram down.  *See* Br. at I.A ("[T]hese protections apply only to [dissenting] ***impaired*** classes of creditors.") (emphasis in original).  But, again, the TLA Claimholders made no argument below that they would be impaired even if TLA is insolvent; and of course there has been no dissenting vote of an impaired class or a proposed cram down. They therefore lack the threshold predicate for invoking the absolute priority rule.

Beyond this bar to their argument, the premise of the TLA Claimholders' argument is unfounded.  They suggest that because TLA is not being dissolved, its corporate parents must be receiving "value" from it.  But, again, TLA is insolvent and has no surplus "value" to distribute to equityholders.  The TLA Claimholders cite no support for their contrary proposition, and courts that have considered the issue have rejected the mere fact that an entity is not dissolved as a basis for requiring payment of PPI or invoking the absolute priority rule.  *See, e.g.*, *In re W.R. Grace & Co.*, 475 B.R. 34, 164 n.138 (D. Del. 2012) (rejecting creditors' theory that solvency can be defined as "equity retaining value"); *In re Ion Media Networks, Inc.*, 419 B.R.

585, 601 (Bankr. S.D.N.Y. 2009) ("The technical preservation of equity is a means to preserve the corporate structure that does not have any economic substance and does not enable any junior creditor or interest holder to retain or recover any value under the Plan."); *In re MPM Silicones, LLC*, 531 B.R. 321, 331 n.8 (S.D.N.Y. 2015), *rev'd on other grounds In re Matter of MPM Silicones, L.L.C.*, 874 F.3d 787 (2d Cir. 2017) ("Nor does the Plan violate the absolute priority rule by preserving intercompany interests without paying the Subordinated Noteholders in full."); *cf. In re PPI Enters.*, 228 B.R. 339, 346 (Bankr. D. Del. 1998) ("Congress clearly contemplated value being given to equity holders even where creditors' nonbankruptcy law rights are materially adversely affected by the Code[.]"), *aff'd* 324 F.3d 197 (3d Cir. 2003).

Beyond these fatal defects, the TLA Claimholders have no applicable authority to support their argument. They point to various pre-Code decisions that do not address or control the application of the Bankruptcy Code provisions that govern here, including section 502(b)(2)'s disallowance of PPI. *See* Br. at I.D. Still further, many of their cited cases do not address a claim for PPI or an unsecured claim. This is true, for example, of *Consolidated Rock Products Co. v. Du Bois*, 312 U.S. 510 (1941), which the TLA Claimholders repeatedly cite. *Consoidated. Rock* is a pre-Code decision; it did not address PPI; and it did not address unsecured creditors such as the TLA Claimholders but instead addressed a secured creditor

(which, unlike unsecured creditors, could claim PPI under section 506 of the Code). Courts have therefore declined to consider *Consolidated Rock* when confronted with the issue here – an unsecured creditor's claim for PPI in a case governed by the Code. *See, e.g.*, *In re Hertz Corp.*, 637 B.R. at 797-98; *In re PG&E Corp.*, 610 B.R. 308, 313 (Bankr. N.D. Cal. 2019); *In re Energy Future Holdings*, 540 B.R. at 115.

Still further, the cases the TLA Claimholders cite that do involve an award of PPI have made clear that the basis for such an award is the solvency of the debtor. *See, e.g., Am. Iron and Steel Mfg. Co. v. Seabord Air Line Ry.*, 233 U.S. 261, 266-67 (1914) ("[A]fter property of an insolvent is *in custodia legis* interest thereafter accruing is not allowed on debts" except "in the rare instances" where a debtor ultimately proved solvent); *Ruskin*, 269 F.2d at 830-32 (awarding PPI to secured creditor of solvent debtor); *Brown v. Leo*, 34 F.2d 127, 128 (2d Cir. 1929) (noting that ordinarily "interest on unsecured claims stops when the petition is filed," but "this estate will be solvent"); *Ex parte Clarke*, 4 Ves. Jr. 677, 349-40 (1799) (awarding PPI due to a "surplus" of the debtor's estate); *Ex parte Mills*, 2 Ves. Jr. 296, 242 (1793) (an "insolvent estate, where there is no surplus" would not be required to pay PPI); *Bromley v. Goodere*, 1 Atkyns 75 (1743) (awarding PPI because "bankrupt's estate is sufficient to pay all, with a large surplus"); *Debentures Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264, 270 (1st

Cir. 1982) ("[I]n the case of insolvent debtors interest, whether stipulated in a contract or not, stops at the moment the petition in bankruptcy is filed.").[10]

Finally, the TLA Claimholders' attempt to invoke the absolute priority rule under section 1129 would fail on its own terms. Section 1129(b)(2)(B)(i) provides for the holder of an unsecured claim to receive an amount equal to the "***allowed*** amount of such claim." 11 U.S.C. § 1129(b)(2)(B)(i) (emphasis supplied). But the TLA Claimholders have specifically acknowledged that section 502(b)(2) provides that a Bankruptcy Court "shall not include 'unmatured interest' as part of a creditor's 'allow[ed]' amount." Br. at 36. Thus, by definition, the "allowed amount" of a claim that an unsecured creditor could receive under section 1129(b) would not include PPI.

### F. The TLA Claimholders' Other Miscellaneous Arguments Are Likewise New And Meritless

In their effort to fashion a claim for PPI that does not depend on the alleged solvency of TLA, the TLA Claimholders offer various other new arguments

---

[10] *See also Matter of Beverly Hills Bancorp.*, 752 F.2d 1334, 1339 (9th Cir. 1951) (while "accrual of interest on a debt is suspended upon the filing of a petition of bankruptcy," an award of PPI "may be allowed when the bankrupt later proves to be solvent"); *Beecher v. Leavenworth State Bank*, 192 F.2d 10, 13 (9th Cir. 1951) interest stopped accruing on unsecured claims as of the date of the bankruptcy petition "unless the estate were fully solvent"); *Littleton v. Kincaid*, 179 F.2d 848, 851, 860 (4th Cir. 1950) (PPI awarded to creditor because debtor was solvent); *Miles Corp. v. Lindel*, 107 F.2d 729, 732 (8th Cir. 1939) (awarding PPI to secured creditor of solvent debtor).

referencing statutory provisions and language.  These were not presented to the Bankruptcy Court; again, as an overall matter, the TLA Claimholders did not claim entitlement to PPI on any basis other than the solvent debtor exception.  A1800, A1808-A1809 (Certification Decision).

In any event, these new arguments are meritless.  First, the TLA Claimholders contend that section 726(a)(5) mandates paying PPI, despite section 502(b)(2), without any solvency requirement.  Br. at 44.  But section 726 simply provides a waterfall for the "distribution of property of the estate."  *See* 11 U.S.C. § 726; *Energy Future Holdings*, 540 B.R. at 113.  Under section 726's waterfall, any payment of interest, the fifth priority, necessarily requires that a debtor have sufficient solvency – that is, property to distribute – that would enable it to satisfy the first four priority distributions and then satisfy the fifth priority.  *Id.*; *see also Kitrosser*, 177 B.R. at 469 ("One situation in which the debtor is required to pay postpetition interest on unsecured or undersecured debt is when the debtor . . . is found to be *solvent* . . . [T]his rule is codified in Section 726(a)(5).").  But TLA is **insolvent**, as the Bankruptcy Court found.  It does not have surplus property to distribute – *i.e.*, solvency – in order to satisfy the first four priorities and then pay interest as the fifth priority.[11]

---

[11]     Further, when interest is to be paid under section 726(a)(5), it is at the "legal rate," which is the federal judgment rate.  A1355-A1366 (Confirmation Decision) (discussing authorities); Section V, *infra*.

Second, the TLA Claimholders present a convoluted argument about the supposed distinction between a "claim" and "allowed claim" and paying PPI "on a claim" versus "as a claim." Br. at 39-42. These arguments (which were not presented below) cannot change the core tenets discussed above and that courts have consistently applied: section 502(b)(2) disallows PPI; an unsecured creditor is not "impaired" by virtue of not receiving what the Bankruptcy Code disallows; and the only exception to the disallowance of PPI for unsecured creditors is through the solvent debtor exception. *See, e.g., Ultra Petroleum Corp.*, 943 F.3d at 763-65 (rejecting arguments like those the TLA Claimholders now present).

The TLA Claimholders' attempt to conjure even one precedent that purportedly supports them entails a gross mischaracterization of the unpublished decision in *Monclova* (yet another case they did not cite below). Br. at 40. *Monclova* addressed a claim by the IRS, which has a statutory right to collect interest on unpaid taxes until paid. *Monclova,* 59 F. App'x at 663 (6th Cir. 2003) (noting the IRS's right "[a]ccording to the tax code," to collect "interest on unpaid taxes . . . through the date the amounts are paid"). Contrasting the treatment of PPI as to ordinary unsecured creditors with the special circumstances of an IRS claim, the court stated: "[W]hile this unmatured right to interest payments is subject to disallowance under 11 U.S.C. § 502(b) in most cases, it remains part of both IRS claims." *Id.* But the TLA Claimholders misrepresent the sentence by deleting the reference to the IRS,

stating:  "Although a 'right to post-petition interest is subject to disallowance under 11 U.S.C. § 502(b) in most cases, it remains part of [the] claim[],'" and if it is altered, the claim is impaired."  Br. at 40.  By deleting "IRS" and replacing it with "the" in the quoted sentence, the TLA Claimholders seek to give the impression that *Monclova* was stating a general principle applicable to all unsecured creditors.  But in fact it was just the opposite: The court was drawing a distinction between the IRS's claims and "most cases" involving ordinary unsecured claims, as to which the "right to post-petition interest is subject to disallowance under 11 U.S.C. § 502(b)."  59 F. App'x at 663.

## III.    The Bankruptcy Court Plainly Did Not Err In Finding That The TLA Claimholders Did Not Establish That TLA Is Solvent And That The Debtors Affirmatively Established That TLA Is Insolvent

In assessing the factual question of whether TLA is solvent or insolvent, the Bankruptcy Court conducted a thorough review of the evidence and determined that the TLA Claimholders failed to satisfy their burden to establish that TLA is solvent and, moreover, that while it was not their burden to do so, the Debtors affirmatively demonstrated that TLA is insolvent.  *See* A1335-A1352 (Confirmation Decision).  The TLA Claimholders' argument that the Bankruptcy Court applied the wrong valuation standard is meritless – and in any event is unavailing, because the Bankruptcy Court also found that the TLA Claimholders' proffered analysis failed

to establish TLA's financial condition and disregarded the full amount of TLA's liabilities.  A1339-A1347 (Confirmation Decision).

As noted, the Second Circuit has emphasized that "[i]nsolvency is a question of fact, and the findings of the Bankruptcy Court in this regard will not be disturbed unless they are clearly erroneous." *In re Roblin Indus., Inc.,* 78 F.3d 30, 35 (2d Cir. 1996)  (citations omitted).  Further, because assessing insolvency is a matter uniquely within the expertise of such courts, "[t]he Bankruptcy Court has broad discretion when considering evidence to support a finding of insolvency." *Id.*; *see also In re Ames Dept. Stores, Inc.*, 506 F. App'x 70, 72 (2d Cir. 2012) (noting that "insolvency is a question of fact" and that the bankruptcy court's findings with respect to solvency are reviewed for clear error); *In re CIL Ltd.*, 582 B.R. 46, 104 (Bankr. S.D.N.Y. 2018); *In re Die Fliedermaus LLC*, 323 B.R. 101, 106 (Bankr. S.D.N.Y. 2005).

In assessing whether TLA is solvent or insolvent, the Bankruptcy Court applied the valuation standard set forth in in section 101(32) of the Bankruptcy Code, which the TLA Claimholders themselves acknowledged is the right standard. A1330, A1334 (Confirmation Decision); *see also* A110 (Objection ¶ 27).  Section 101(32) provides that an entity is "insolvent" when its "financial condition [is] such that the sum of the entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A).  In applying that standard, the Bankruptcy

Court took guidance from *In re SunEdison, Inc.*, which the TLA Claimholders themselves cited in their Objection and in their brief here, Br. at 48, which states that "[f]air value, in the context of a going concern, is determined by the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts." *See* A1342 (Confirmation Decision) (citing *In re SunEdison*, 556 B.R. 94, 101, 104 (Bankr. S.D.N.Y. 2016)). As *SunEdison* explains, the "maximum fair market value of the Debtor's assets" was based on the estimated proceeds of an "orderly sale of their various assets." *In re SunEdison*, 556 B.R. at 101, 104.

The Bankruptcy Court found that the TLA Claimholders' evidence failed to address this standard and in any event could not serve to establish TLA's current financial condition, including because it failed to account for TLA's liabilities and it did not address TLA's current condition. A1339-A1347 (Confirmation Decision). It further found that the Debtors affirmatively established that TLA is insolvent through their evidence that did address the proper standard and that the TLA Claimholders failed to undermine or rebut. A1347-A1352.

In contending that the Bankruptcy Court applied the wrong valuation standard, the TLA Claimholders proffer two decisions that cannot help them: They did not cite these decisions below and the decisions do not address solvency, let alone the standard set forth in section 101(32), which the TLA Claimholders

admitted below is the proper test.  Br. at 47-48, *citing Consol.  Rock Prods.Co. v. Du Bois*, 312  U.S.  at  525-26   (pre-Code  decision  addressing  valuation  of "prospective earnings" for determining whether earnings could meet interest and dividend requirements contemplated in a plan of reorganization such that the plan would  be  feasible); *Assocs.  Com.  Corp.  v.  Rash*, 520  U.S. 952, 965 (1997) (addressing valuation of an asset that is subject to a secured creditor's interest in the context of section 506(a)).[12]

The two decisions the TLA Claimholders cite that do address solvency under section 101(32) do not help them.  *See* Br. at 48.  They cite *SunEdison*, which, as noted, the Bankruptcy Court did consider and apply and which explains that the "maximum fair market value of the Debtor's assets" was to be determined based on the estimated proceeds of an "orderly sale of their various assets."  556 B.R. at 101, 104; A1342 (Confirmation Decision).  The evidence the Debtors presented through their expert Brock Edgar addressed this standard by assessing the value of TLA's assets and the proceeds that could be generated through an orderly sale of those assets, which produced a total valuation figure far below TLA's liabilities.  A1347-

---

[12]     While *Assocs. Com. Corp.* did not address solvency but instead instructed that valuation of an asset that is subject to a secured creditor should look to its "replacement" value, the Supreme Court echoed the Second Circuit's *Roblin* decision in highlighting the deference to be given to Bankruptcy Courts that make such valuation assessments.  It stated that it "leaves to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented."  *Id*. at 965 n. 6.

A1352 (Confirmation Decision).  While this valuation exercise formed part of a so-called "liquidation analysis," it assessed a "high-end recovery" scenario that entailed selling the assets over a lengthy eighteen month period.  As the Bankruptcy Court found, "the duration of the sale process in the high-end recovery scenario – 18 months – undercuts the TLA Claimholders' argument that the Liquidation Analysis provides depressed, forced-sale asset recoveries and thus does not reflect 'fair valuation.'"  A1351; *see* A1351 at n. 48 (Confirmation Decision) (finding that the TLA Claimholders' expert "set forth no evidence that an 18-month sale is somehow a rushed 'fire sale' and does not provide 'fair valuation' under section 101(32) of the Bankruptcy Code").

The TLA Claimholders' other case cite, *Wolkowitz v. Am. Rsch. Corp.,* is likewise unavailing.  Br. at 48 (citing 170 F.3d 1197, 1199 n.3 (9th Cir. 1999)).  They contend that *Wolkowitz* stands for the proposition that the assets of an entity that is capable of continuing as a going concern must be evaluated "as if they had been sold as a unit."  *Id.*  This argument fails for multiple reasons.  First, the Bankruptcy Court found as a matter of fact that TLA itself was not capable of continuing as a going concern, but instead was kept afloat by its parent.  A1367 n.55 (Confirmation Decision) ("TLA could not continue to operate as a going concern without LATAM Parent.").  Second, the TLA Claimholders' expert did not assess a price at which TLA could be "sold as a unit" – and in fact he admitted that his analysis would not

represent the value of TLA if sold as a standalone entity.  *See* A226 (Debtors' Confirmation Reply ¶ 121) (citing Dellepiane testimony).  To the contrary, he "relie[d] on financial projections that assume TLA will operate as part of the consolidated Debtor group" which "inflates the value of TLA's assets."  A1346 (Confirmation Decision); A2080-A2081 (Edgar Rebuttal Decl. ¶¶ 5-7) (explaining that TLA receives a "benefit from operating" as part of the LATAM Debtors' platform "as a single group" and therefore could not be "sold individually without 'value deterioration that could be extremely significant'").  The evidence further demonstrated that the projections the TLA Claimholders relied on "do not reflect all of the costs that TLA would incur as a standalone business" and "reflect the benefits from the synergies and cost savings of an integrated airline and, as a result, they overstate the standalone cash flows of TLA."  A2081 (Edgar Rebuttal Decl. ¶ 8).

Third, the *Wolkowitz* decision did not address or endorse the kind of "discounted cash flow" analysis that the TLA Claimholders' expert proffered, which presents a notional current value based on future projections.  Rather, it made clear that the relevant assessment remained a "balance sheet test to determine solvency." 170 F.3d at 1200; *see id.* (noting that the assessment of solvency rested on the entity's "positive equity on a balance sheet basis").  The Debtors' expert, Brock Edgar, provided such a balance sheet assessment, which established that TLA's liabilities far exceeded its assets.  A1347-A1352 (Confirmation Decision).  As the

Bankruptcy Court found, the TLA Claimholders' expert did not offer any "concrete evidence" to challenge the balance sheet assessment and "[did] not even purport to demonstrate how this gap [of $1.3 billion by which TLA's liabilities exceeded its assets] could be bridged."  A1351 (Confirmation Decision).

Fourth, the Bankruptcy Court determined that, even apart from the fact that the TLA Claimholders' expert's analysis did not address the proper standard, this proffered analysis did not provide a reliable basis for assessing TLA's current financial condition.  A1346 (Confirmation Decision).  The Bankruptcy Court found that the TLA Claimholders' approach "attempts to measure the *current* value of *future* cash flows – amounts that are inherently subjective, indefinite, and do not speak to the value of the assets TLA holds today or held at the Petition Date."  A1346 (Confirmation Decision) (emphasis in original); *see also* A1347 (Confirmation Decision) (agreeing with other courts that have rejected discounted cash flow analyses because they are "subjective" and depend on "assumptions regarding future prices and future costs . . . that are no more than guesses") (internal citation and quotations omitted).

The Bankruptcy Court further found that the "Distributable Waterfall Value Analysis" that the TLA Claimholders' expert relied on was "ill suited to assess the fair value of the assets and liabilities of any individual debtor and thus does not provide a solvency analysis."  A1345 (Confirmation Decision).  The Bankruptcy

Court further found that the TLA Claimholders' expert disregarded the full amount of TLA's liabilities.   A1343, A1345 (Confirmation Decision).   As a result, the Bankruptcy Court concluded that, "even utilizing the Distributable Value Waterfall (but correcting for Mr. Dellepiane's undercount of TLA's liabilities) the Court finds the methodology demonstrates that TLA is insolvent, not solvent."   A1344 (Confirmation Decision).

 As noted, "[t]he Bankruptcy Court has broad discretion when considering evidence to support a finding of insolvency" and its "findings in this regard will not be disturbed unless they are clearly erroneous."   *In re Roblin Indus.,* 78 F.3d at 35. The Bankruptcy Court's findings here plainly are not clearly erroneous.

Finally, the TLA Claimholders suggest in passing (but do not mention in their issues presented) that the Bankruptcy Court erred in finding that they bore the burden as to their claim that TLA is solvent.   Br. at 46.   The case they cite as purported support concerns the burden of satisfying the confirmation requirements contained in section 1129(a), which are not at issue here.   *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986).   The Bankruptcy Court was right in finding that, in invoking the solvent debtor exception, the TLA Claimholders bore the burden of demonstrating that TLA is solvent.   A1334-A1335 (Confirmation Decision).   But even if Debtors bore the burden to prove insolvency, the Bankruptcy Court found that the Debtors affirmatively demonstrated that TLA was insolvent.   A1347-A1352

(Confirmation Decision). Accordingly, regardless of burden, the TLA Claimholders cannot possibly establish the clear error that would be necessary to vacate the Bankruptcy Court's finding that TLA is not solvent but instead is insolvent.

In sum, there is no basis to remand to the Bankruptcy Court for review of the evidence under the TLA Claimholders' proposed alternative standard for evaluating solvency, because the Bankruptcy Court applied the right standard and it also found the TLA Claimholders' evidence to be deficient even under their own approach.

## IV.    The Bankruptcy Court Did Not Err In Finding That, Even If The TLA Claimholders Could Establish That TLA Was Insolvent, Equity Would Not Support Their Claim For PPI At The Contract Rate

The Bankruptcy Court found that even if the TLA Claimholders had established that TLA was solvent, their claim for nearly $150 million in PPI would be rejected based on equitable considerations.  The Bankruptcy Court concluded:

> [E]ven if the Court indulged the TLA Claimholders, their argument [for recovery of PPI] is without merit.  The Court agrees with the Debtors that it would not be equitable to allow the TLA Claimholders to receive approximately $150 million more to satisfy the TLA GUCs given the context of the Plan.  The Plan represents a delicate, intricate, and integrated compromise of myriad claims, arguments, and rights.  *See*, *e.g.*, Plan § 5.2.  As such, providing the TLA Claimholders with an additional recovery would reduce the recoveries to impaired creditors under the Plan and risk disrupting the delicate balance set forth in it. The Court will not sanction that result.

A1366 (Confirmation Decision); A1780 (Stay Decision).

The TLA Claimholders do not address this finding, let alone demonstrate that it was an abuse of discretion.[13]   The ruling below, therefore, can be affirmed on this basis alone.

## V.   The Bankruptcy Court Correctly Found That, Even If The TLA Claimholders Had Established A Right To PPI, It Would Be Calculated At The Federal Judgment Rate

The Bankruptcy Court correctly determined that, if the TLA Claimholders had established a right to PPI by establishing that TLA is solvent, the rate would be the federal judgment rate that is determined under 28 U.S.C. § 1961 rather than the contractual and default rates that the TLA Claimholders propose.   A1355-A1366 (Confirmation Decision).   As noted, the TLA Claimholders' only argument as to the rate was embedded in their solvent debtor theory: they asserted that the solvent debtor exception should be placed in section 1124(1) and that, if the exception

---

[13]   The TLA Claimholders attempt to downplay the impact if the District Court were to reverse the Bankruptcy Court's rulings by noting the Court "need not reverse the confirmation of the Plan."   Br. 50.   However, no such assurances exist if the Court were to find that TLA owed post-petition interest at the contract rate.   It is undisputed that TLA does not have the funds or access to liquidity to pay an additional $150 million in interest not currently contemplated in the Plan (as it relies on the group to provide the cash even to pay its allowed claims in full in cash).   *See* A1367 n.55 (Confirmation Decision).   Requiring payment of such additional amounts would instead "reduce the recoveries to impaired creditors under the Plan and risk disrupting the delicate balance set forth in it,"   A1366 (Confirmation Decision), potentially requiring the Debtors and the numerous stakeholders involved in the Plan to renegotiate the Plan in its entirety and submit a revised plan for confirmation before the Bankruptcy Court again.

applied because TLA is solvent, they could seek PPI at the contract rate. A114-A121 (Objection ¶¶ 33-44). But the Bankruptcy Court concluded, as have other courts, "the solvent debtor exception survived [the enactment of the Code] through section 1129(a)(7), not section 1124(1)." A0667-A0668. Because section 1129(a)(7) in turn refers to section 726(a)(5), the rate of PPI in solvent debtor cases is the "legal rate" – *i.e.*, the federal judgment rate. A1330-1333; A1352-1366 (Confirmation Decision).

The Bankruptcy Court's decision was well-reasoned and grounded in the applicable statutory sections and case law. *See id.* The only proper argument the TLA Claimholders could offer on appeal is the one they presented below: that TLA is solvent and, if the solvent debtor exception is founded in section 1124(1), they should receive PPI at the contract rate. A114-A121 (Objection ¶¶ 33-44). But TLA is not solvent; and the Bankruptcy Court rightly found that the solvent debtor exception survives through section 1129(a)(7), not section 1124(1).[14]

---

[14]    Even if they could offer arguments outside the scope of their argument below, the cases the TLA Claimholders cite for the proposition that interest should be paid at contractual rates are unpersuasive and, in any event, recognize that equitable considerations could require otherwise. *See, e.g., Colfin Bulls Fundings LLC v. Paloian*, 547 B.R. 880, 898 (N.D. Ill. 2016) ("equitable considerations" could support a finding that creditors were not entitled to interest at contractual rates); *In re Dow Corning*, 456 F.3d 668, 679 (6th Cir. 2006) (same); *In re Fast*, 318 B.R. 183, 191-92 (Bankr. D. Colo. 2004) (determining rate of interest based on "equities"). As noted, the Bankruptcy Court found that the equities did not support an award of nearly $150 million in PPI to the TLA Claimholders at contractual rates. A1366.

## **CONCLUSION**

The Debtors respectfully request that the Court reject the TLA Claimholders'

appeal and affirm the Bankruptcy Court's Confirmation Decision.

Dated: August 8, 2022
New York, NY

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: */s/ David H. Herrington*

Jeffrey A. Rosenthal
Lisa M. Schweitzer
David H. Herrington
Abena A. Mainoo
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Appellees LATAM Airlines Group S.A.,
et al.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i), because it contains 12979 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8015(g).

2.      This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5) and the type style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated:      New York, New York
            August 8, 2022

                                      By: */s/ David H. Herrington*