UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: LATAM Airlines Group S.A., *et al.*, <br><br> TLA Claimholders Group, <br>                *Appellant*, <br><br> v. <br><br> LATAM Airlines Group S.A., *et al.*, <br>                *Appellees*. | Case No. 22-cv-5891 (DLC) <br><br> On Appeal From The United States Bankruptcy Court For The Southern District Of New York <br><br> Case No. 20-bk-11254 <br><br> The Honorable James L. Garrity Jr. |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR STAY PENDING APPEAL**

DANIEL A. FLIMAN
CHRISTOPHER M. GUHIN
EMILY L. KUZNICK
JOHN F. IAFFALDANO
PAUL HASTINGS LLP
200 Park Ave.
New York, NY 10166
Telephone:    212.318.6000
Facsimile:     212.319.4090

*Counsel for the TLA Claimholders Group, except with respect to the pleadings filed by Intervenor-Appellee Banco del Estado de Chile*

MATTHEW D. MCGILL
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone:    202.955.8500
Facsimile:     202.467.0539
E-mail: mmcgill@gibsondunn.com

*Counsel for the TLA Claimholders Group*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1
ARGUMENT .................................................................................................................................. 2
    I.    THE FOUR-FACTOR BALANCING TEST FAVORS GRANTING A STAY ................................................................................................................. 2
        A.    The TLA Claimholders Group Will Suffer Irreparable Harm Absent a Stay ............................................................................................ 3
        B.    The Risk of Injury to Non-Moving Parties Is Minimal ............................. 5
        C.    The TLA Claimholders Have a Substantial Possibility of Success ........... 7
        D.    The Public Interest Favors Allowing Meaningful Appellate Review ........ 9
    II.    NO BOND SHOULD BE REQUIRED ............................................................... 10
CONCLUSION .......................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 473 W. End Realty Corp.*,
   507 B.R. 496 (Bankr. S.D.N.Y. 2014) ................................................................................... 9

*In re Adelphia Commc'ns Corp.*,
   361 B.R. 337 (S.D.N.Y. 2007) ........................................................................................ 3, 10

*In re Anderson*,
   560 B.R. 84 (S.D.N.Y. 2016) .................................................................................................. 9

*In re Best Products Co.*,
   177 B.R. 791 (S.D.N.Y. 1995) ................................................................................................ 5

*Buccellati Holding Italia Spa v. Laura Buccellati, LLC*,
   2014 WL 1325748 (S.D.N.Y. Mar. 17, 2014) ........................................................................ 7

*In re Calpine Corp.*,
   2008 WL 207841 (Bankr. S.D.N.Y. Jan. 24, 2008) ................................................................ 4

*Cohen v. Metro. Life Ins. Co.*,
   334 F. App'x 375 (2d Cir. 2009) .......................................................................................... 10

*In re Country Squire Assocs. of Carle Place, L.P.*,
   203 B.R. 182 (B.A.P. 2d Cir. 1996) ....................................................................................... 3

*In re DAEBO Int'l Shipping Co.*,
   2016 WL 447655 (Bankr. S.D.N.Y. Feb. 4, 2016) ................................................................ 3

*In re Degennaro*,
   2020 WL 6827936 (S.D.N.Y. Oct. 2, 2020) .......................................................................... 3

*In re General Motors Corp.*,
   409 B.R. 24 (Bankr. S.D.N.Y. 2009) ..................................................................................... 4

*Lebron v. Nat'l R.R. Passenger Corp.*,
   513 U.S. 374 (1995) ............................................................................................................... 7

*In re Metromedia Fiber Network, Inc.*,
   416 F.3d 136 (2d Cir. 2005) ............................................................................................. 2, 6

*New York v. Trump*,
   490 F. Supp. 3d 736 (S.D.N.Y. 2020) .................................................................................... 4

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................................. 10

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*Tolbert v. Queens Coll.*,
   242 F.3d 58 (2d Cir. 2001) ............................................................................................. 7

*United States v. Harrell*,
   268 F.3d 141 (2d Cir. 2001) ........................................................................................... 7

*United States v. Williams*,
   504 U.S. 36 (1992) ......................................................................................................... 7

*Weber v. United States Tr.*,
   484 F.3d 154 (2d Cir. 2007) ......................................................................................... 10

*In re Windstream Holdings, Inc.*,
   838 F. App'x 634 (2d Cir. 2021) ................................................................................... 4

**Statutes**

11 U.S.C. § 1124(1) .............................................................................................................. 9

28 U.S.C. § 158(d)(1) ........................................................................................................... 3

**Rules**

Fed. R. Bankr. P. 8007(a)(1)(C) ........................................................................................ 10

Fed. R. Bankr. P. 8007(a)(1)(D) ........................................................................................ 10

**PRELIMINARY STATEMENT**

The Oppositions[1] to the TLA Claimholders' Motion do not address, or even recognize, just how little time remains before the Debtors intend to bog down—and eventually seek the dismissal of—this appeal with arguments about equitable mootness. Although the TLA Claimholders believe this appeal will not be equitably moot, a rights offering that the Debtors themselves have stated may render the Plan irreversible will occur "in September"—which starts less than two weeks from today. Should a court agree that the Plan is irreversible upon the occurrence of the rights offering and find this appeal moot, the TLA Claimholders will be stripped of their statutory appellate rights. The Second Circuit has endorsed a path out of such a bind created by the Debtors: a stay pending appeal. This Court should follow that path.

The Oppositions create a number of false impressions. First, the Debtors state that even an imminent risk of mootness causing a loss of appellate rights is not a cognizable "irreparable harm," but that is simply wrong—courts in this district have found just the opposite, and even the cases on which the Debtors rely do not support their position. Second, the Debtors continue to lodge baseless assertions of forfeiture, and contort precedent, to make it appear that Appellants have no chance of success on the merits. Their arguments misconstrue the precedent and misstate the record, including by entirely ignoring the many times Appellants have pointed out why their arguments are amply preserved. Third, the Debtors prognosticate, without evidence, that a temporary stay pending the result of this limited-issue appeal (which would not require revisions to the Plan

---

[1] The Appellees' Opposition to a Stay Pending Appeal filed by the Debtors, Dkt. 75, is referred to as "the Opposition" and abbreviated as "Opp." The Intervenor-Appellee's Opposition filed by the Parent Ad Hoc Claimant Group, Dkt. 70, is referred to as the "Parent Claimholders' Opposition." The Intervenor-Appellees' Statement In Support of The Response Brief for Debtors filed by the Ad Hoc Group of LATAM Bondholders, Dkt. 71, merely endorses the Debtors' position and is not separately addressed in this Reply. The three filings are referred to collectively "the Oppositions."

even if Appellants prevail) will somehow cause sophisticated financial institutions to walk away from agreements worth billions of dollars. But this prediction has no basis in the record, which reflects mutually beneficial renegotiation of agreements in light of the changing course of litigation, and defies even basic economics. Fourth, the Debtors bizarrely claim that the Appellants have not shown sufficient urgency pursuing this appeal, but the TLA Claimholders have consistently sought to expedite its resolution in both the bankruptcy court and this Court.

All four factors weigh in favor of granting a stay pending appeal. The imminent risk of a loss of appellate rights clearly constitutes irreparable harm. Any slim harm that might fall on the Debtors is greatly exaggerated and in any event self-imposed; all the Debtors need to do is state that they will not seek dismissal based on equitable mootness, and the dispute over a stay will disappear. The Appellants have shown more than the required substantial possibility of success on the merits. And—although the Debtors fail to seriously argue the public interest is on their side—the public's interest in the prompt, correct resolution of a question of statutory interpretation that is essential to the understanding of "impairment" under the Bankruptcy Code outweighs any slim public interest in finality alone. Accordingly, the Court should grant the Motion.

## ARGUMENT

### I. The Four-Factor Balancing Test Favors Granting a Stay

The Oppositions repeatedly misstate both the record of this case and the relevant law. But their central defect is their insistence that the Debtors must be allowed to substantially consummate the Plan before this Court and, if necessary, the Second Circuit, can resolve the appeal. The Second Circuit has expressed a strong preference that objecting parties seek stays pending appeal in bankruptcy cases because they permit the court to "provide relief" at any stage of appellate review "if it is at all feasible." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005).

Nothing in the Oppositions supports departing from that preference, especially given the irreparable harm the TLA Claimholders face from the imminent risk of losing their appellate rights.

### A. The TLA Claimholders Group Will Suffer Irreparable Harm Absent a Stay

As the Appellants have explained, *see* Motion for Stay Pending Appeal, Dkt. 30 ("Mot.") 10–14, the loss of appellate rights is the "quintessential form of prejudice," *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 348 (S.D.N.Y. 2007) (quotation marks omitted), such that even a *risk* of equitable mootness can be irreparable harm, *see In re DAEBO Int'l Shipping Co.*, 2016 WL 447655, at *2 (Bankr. S.D.N.Y. Feb. 4, 2016). Exactly such a risk is present here: the Debtors have stated that they will take steps to consummate the Plan that may be irreversible as soon as September. B.R.Dkt. 5918 at 11-12. Nothing in the Oppositions contests that this is the Debtors' goal.

The Debtors nonetheless state that equitable mootness should be no concern because this Court has ordered expedited briefing. Opp. 8. This obscures two crucial facts. First, there can be no certainty that this Court will issue its decision between oral argument on August 26, Dkt. 46, and the point at which the Debtors' implementation of the Plan may be irreversible. Second, even assuming the Court issues a decision within such a short time, any losing party will have a statutory right to take an appeal to the Second Circuit. *See* 28 U.S.C. § 158(d)(1). Although a stay would be relatively short, there is simply no chance an appeal to the Second Circuit would be resolved before the Debtors argue equitable mootness if no stay is granted.

The Debtors' claim that a risk of equitable mootness can never support irreparable harm, Opp. 7–9, is simply not the law. "[W]here the denial of a stay pending appeal risks mooting *any* appeal of *significant* claims of error, the irreparable harm requirement is satisfied." *Adelphia Commc'ns*, 361 B.R. at 347–48 (emphases in original) (citing *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996)); *see also In re Degennaro*, 2020 WL 6827936, at *1 (S.D.N.Y. Oct. 2, 2020) (granting stay where "failure to grant the stay would moot

3

the appeal"). The Debtors' view makes even less sense given their statement that a stay now would be premature, Opp. 8, because the imminent rights offering has not yet occurred. But as soon as it does occur, the Debtors will no doubt argue that the TLA Claimholders waited too long to seek relief. The way out of this Catch-22 is a stay pending appeal. *See In re Windstream Holdings, Inc.*, 838 F. App'x 634, 637 (2d Cir. 2021).[2]

The Debtors' attempts to cherry-pick cases finding a risk of mootness not sufficient *in particular cases*, *see* Opp. 8, further misstate the law. They rely on *In re Calpine Corp.*, which found no irreparable harm where appellants engaged in "dilatory conduct" and "merely invoke[d]" equitable mootness based on a stock distribution that would "likely" occur—compared to here, where the rights offering *will* soon occur and where the Debtors themselves have stated that it could trigger equitable mootness. 2008 WL 207841, at *4-5 (Bankr. S.D.N.Y. Jan. 24, 2008). Similarly misplaced is the Debtors' reliance on *In re General Motors Corp.*, where, as the Debtors overlook, the court assumed that "threatened loss rather than the loss of the right to appeal *vel non*" was sufficient to show "irreparable injury" and proceeded to analyze the other factors. 409 B.R. 24, 31 (Bankr. S.D.N.Y. 2009) (quotation marks omitted). And the Debtors' citation to *In re Best Products Co.* is especially curious, given that the court there dismissed an appeal as equitably moot after appellants failed to seek a stay, merely arguing that the pendency of the appeal alone was

---

[2] *New York v. Trump*, 490 F. Supp. 3d 736 (S.D.N.Y. 2020), invoked by the Parent Claimholders, is irrelevant. *See* Parent Claimholders Opposition 2–3. First, it is a decision of the district court—although it was decided by a three-judge panel—and so the Parent Claimholders' attempt to give it special precedential weight is inappropriate. Second, even addressing *Trump* on its own terms, the finding of a lack of irreparable harm was premised in part on the fact that a statutory deadline had not yet passed, such that no decision of the court would be binding on defendants until that date, rendering the stay motion "frivolous," *see* 490 F. Supp. 3d at 741–42, and that any potential harm could be remedied after the fact, *id.*, which no party asserts is true after an appeal is dismissed in a bankruptcy case as equitably moot.

sufficient to preserve their appellate rights.  177 B.R. 791, 803–04 (S.D.N.Y. 1995).  That is precisely the opposite of what the TLA Claimholders have done.

The Debtors also accuse the TLA Claimholders of delay because they did not agree to the Debtors' unreasonable proposed briefing schedule.  Opp. 8–9.  They do not mention that the parties agreed upon an expedited briefing schedule *one day* after the Debtors suggested their schedule, which had proposed making the opening brief due days before this Court even docketed the appeal.  *Id.* at 8 n.5 (citing Dkts. 3, 4).  These complaints about a lack of urgency also reveal a contradiction: the Debtors simultaneously argue that the harm the TLA Claimholders predict is too far in the future *and* that they waited too long to seek a stay.  But the TLA Claimholders have diligently sought to preserve their appellate rights.  They have sought stays from the bankruptcy court and this Court, sought certification of a direct appeal to the Second Circuit, and briefed this appeal on an expedited basis.  Dkt. 9.  There can be no suggestion that the TLA Claimholders have not acted with urgency to avoid the harm that the Debtors will seek to foist upon them absent a stay pending appeal.

### B.    The Risk of Injury to Non-Moving Parties Is Minimal

The Debtors continue to press the idea that a stay would "destroy" critical agreements and call into question the entire reorganization, but they show no support for that drastic proposition.  Opp. 10.  The reason for that is simple: it contradicts the record and makes no economic sense.

Neither the DTE/DIP Facilities[3] nor the Backstop Agreements are in any danger.  As the TLA Claimholders comprehensively described, *see* Mot. 15, the Debtors and Plan Support parties have modified agreements throughout the pendency of this petition—including various extensions,

---

[3]   Terms have the meanings provided in the TLA Claimholders motion for a stay and in the stay briefing before the bankruptcy court.  *See* Mot. 15; B.R.Dkts. 5787, 5824.

*see* B.R.Dkt. 4660-3, B.R.Dkt. 5372-1, at 39.[4] Sophisticated lenders are willing to accommodate extensions because they *want* to consummate these favorable transactions—they will not simply walk away from those agreements due to a slight delay. This is especially so here because Plan *as already confirmed* requires the payment of post-petition interest at the contract rates—the Plan may remain intact. *See* Opening Br. 5, 18, 51. Indeed, the Debtors and Parent Claimholders contractually committed to support confirmation of those terms, which *expressly provide* that the TLA Claimholders must receive the payment necessary to render them unimpaired under section 1124(1). The Oppositions identify no exemption that would allow them to prevent the Plan from now going effective simply because this Court interprets the Plan's language to require the payment of post-petition interest. And, the Debtors can operate as they have been during the pendency of a stay, and they have not shown any significant risk to Plan feasibility, which would be difficult given that they project over $2 *billion* in liquidity upon emergence. *See* B.R.Dkt. 4777-3, at 8.

Even if the lenders acted against their economic interest—and inexplicably abandoned their multi-billion-dollar agreements in light of a temporary stay—that speculative harm is of the Debtors' own creation. Equitable mootness is a prudential doctrine; it does not go to the Court's jurisdiction and is waivable. *See Metromedia*, 416 F.3d at 144. The Debtors can obviate the need for a stay and avoid any potential harm to themselves or other creditors simply by committing not to argue equitable mootness in this appeal. Mot. 12-14. This Motion presented the Debtors with another opportunity to commit not to seek to deprive this Court of an opportunity to decide this case on the merits, but they have chosen not to do so.

---

[4] There is ample time remaining for Debtors to seek further extensions, given that the DTE/DIP Facility has no scheduled maturity until December 1, 2023, *see* B.R.Dkt. 5666, and the Backstop Parties have extended their respective agreements until November 30, 2022.

6

### C.     The TLA Claimholders Have a Substantial Possibility of Success

The TLA Claimholders have demonstrated a substantial possibility of success of the arguments that: (1) they must receive post-petition interest to be classified as unimpaired; (2) they must receive post-petition interest before value passes to equity; (3) solvency must be determined based on a debtor's actual status, here a going concern; and (4) post-petition interest should be paid at the contractual rates.  Mot. 16–23.  The Debtors do not principally argue that these claims lack a possibility of success.  Instead, as they did on the merits, the Debtors argue primarily that the TLA Claimholders forfeited some of these arguments.  Opp. 15–19.

The Debtors' forfeiture argument willfully disregards the rule that an issue is preserved for appeal "if it was 'pressed or passed upon below,'" *i.e.*, "when it fairly appears in the record as having been raised *or* decided."  *United States v. Harrell*, 268 F.3d 141, 146 (2d Cir. 2001) (emphasis added) (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)).  As long as a claim is pressed or passed upon below, on appeal "a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below."  *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995); *see* Reply Br. 6-9.

Even though it is undisputed that the Appellants' arguments on appeal were *both* pressed and passed on below, the Debtors claim that the Appellants raised them in too perfunctory a manner to preserve them.  Opp. 17–19.  This improperly seeks to hold Appellants to the standard for preserving an argument in an *opening appellate brief*, not the standard for preserving an argument for appeal.  *See Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001); *Buccellati Holding Italia Spa v. Laura Buccellati, LLC*, 2014 WL 1325748, at *4 (S.D.N.Y. Mar. 17, 2014); Reply Br. 6–9.

The Debtors also claim that the Appellants' supposedly inadequate arguments deprived the bankruptcy court of the opportunity to consider them.  Opp. 16–17.  The Debtors can make this argument only by ignoring the catalog (submitted both in the bankruptcy court and this Court,

B.R.Dkt. 6039, at 3–5; Reply Br. 9–12) of the places where the arguments were both pressed and passed upon (*i.e.*, actually decided) below. Specifically, the TLA Claimholders argued in their objection to the Plan that "[s]tripping creditors of their bargained-for rights to interest is a violent alteration of their 'legal, equitable, and contractual rights'" and that TLA's equity owners "are not entitled to a cent of recovery on the TLA equity until the TLA GUCs are paid in full." A101; A122. The TLA Claimholders also repeatedly made these arguments during the confirmation hearing, including in a closing presentation slide deck shown during the hearing. A0438, A0445–46, A0462, A0589, A0593–97, A0602–04. Indeed, the Debtors below asked the bankruptcy court to exclude certain slides from the closing presentation, but the court concluded that they did not "present new legal argument." A0667 n.49.

And the bankruptcy court engaged with—and ruled on—these arguments, including in an entire section in the Confirmation Opinion under the Heading "Whether the GUCs are Impaired Under the Plan," which held that because "the Bankruptcy Code itself disallows payment of PPI under section 502(b)(2), the claims are not impaired within the meaning of section 1124(1)" and that the requirement that a creditor receive post-petition interest at the legal rate "before any distribution to the debtor … only applies when the debtor is solvent." A0646–48; A0676–81. These are precisely the holdings that the TLA Claimholders challenge on appeal.

The Appellants have at least a substantial possibility of success to warrant a short stay to resolve this appeal. To obtain a stay, the TLA Claimholders are required to show a "substantial *possibility* of success,"—not a "*probability*" of success or a finding that success is more likely than not. *See In re Anderson*, 560 B.R. 84, 90-91 (S.D.N.Y. 2016) (quotation marks omitted; emphases added); *In re 473 W. End Realty Corp.*, 507 B.R. 496, 501 (Bankr. S.D.N.Y. 2014) (noting that the

8

"substantial possibility of success test … is intended to eliminate *frivolous appeals*") (quotation marks omitted; emphasis added).

The TLA Claimholders have shown more than a substantial possibility of success.  A creditor can only be classified as unimpaired, and deprived of the franchise and the substantive protections afforded to impaired creditors, if the Plan "leaves unaltered the legal, equitable, and contractual rights" of the creditor.  11 U.S.C. § 1124(1).  The TLA Claimholders have shown that the denial of post-petition interest is inconsistent with that text and with the statutory history of section 1124.  Opening Br. 14 at 22–46; Mot. 19–22.  Specifically, the TLA Claimholders have shown that the bankruptcy court's interpretation of section 502(b) conflicts with the plain text of section 1124(1), other provisions of the Code, and Congress's repeal of section 1124(3) in response to *New Valley*.  The TLA Claimholders have also shown that the bankruptcy court wrongly concluded that any entitlement to post-petition interest rested on a showing of TLA's solvency and, in determining TLA's solvency, improperly considered TLA's book and liquidation value rather than its value as a going concern, and wrongly determined that the federal judgment rate was the proper rate for payment of post-petition interest.  Opening Br. 46–50; Mot. 22.

### D.  The Public Interest Favors Allowing Meaningful Appellate Review

The Debtors claim that a stay is not in the public interest because it would delay the Debtors' emergence from bankruptcy, which could jeopardize their businesses.  Opp. 23.  But this is just another way of saying that a stay would prejudice the Debtors, which does not bear on the public interest.  The Debtors also make the unsupported claim that a temporary delay pending an expedited appeal might derail their emergence from bankruptcy and weaken the airline industry generally.  *Id.*  Even granting the Debtors' dubious contention that a brief stay in this case would have such ripple effects, the Debtors fail to show why the correct resolution of the TLA Claimholders' objections is less important than their immediate emergence from Chapter 11.

Seeking dismissal on mootness grounds would put in jeopardy the "substantial and important right" of parties to appeal bankruptcy court rulings. *Adelphia Commc'ns*, 361 B.R. at 342. Further, the Second Circuit has lamented the "paucity" of settled bankruptcy caselaw, *Weber v. United States Tr.*, 484 F.3d 154, 158 (2d Cir. 2007), and this case provides an opportunity to clarify the rights of unimpaired creditors under the Code, a significant issue of bankruptcy jurisprudence.

## II. No Bond Should Be Required

There is no basis for the Debtors' proposed $10.238 billion bond. Opp. 24–25. A supersedeas bond should not be required from parties, like the TLA Claimholders, who satisfy the four equitable stay factors. The posting of a bond typically *entitles* an appellant to a stay regardless of whether he can satisfy the stay factors, *Cohen v. Metro. Life Ins. Co.*, 334 F. App'x 375, 378 (2d Cir. 2009), and the availability of a supersedeas bond does not limit a bankruptcy court's equitable power to "suspen[d] … proceedings" pending appeal or to issue "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending," Fed. R. Bankr. P. 8007(a)(1)(C)–(D); *see also Nken v. Holder*, 556 U.S. 418, 421 (2009).

If the Court does require a bond as a condition to granting the stay, the enormous sum requested by the Debtors is incommensurate with any harm they might suffer as a result of a temporary stay pending appeal. The Debtors do not (and cannot) offer any persuasive evidence that they stand to risk losing *all* their new investments just because a brief stay is entered. Moreover, in the extremely unlikely event that the Debtors were to lose such investments, the actual harm would amount at most to the cost of obtaining new financing relative to the cost of the current financing—but the Debtors have presented no evidence of even that speculative amount of harm.

## CONCLUSION

The motion for a stay should be granted.

Date: August 19, 2022

                                                Respectfully submitted,

| | |
|---|---|
| DANIEL A. FLIMAN<br>CHRISTOPHER M. GUHIN<br>EMILY L. KUZNICK<br>JOHN F. IAFFALDANO<br>PAUL HASTINGS LLP<br>200 Park Ave.<br>New York, NY 10166<br>Telephone:  212.318.6000<br>Facsimile:   212.319.4090<br><br>*Counsel for the TLA Claimholders Group, except with respect to the pleadings filed by Intervenor-Appellee Banco del Estado de Chile* | */s/ Matthew D. McGill*<br>MATTHEW D. MCGILL<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC  20036<br>Telephone:    202.955.8500<br>Facsimile:     202.467.0539<br>E-mail: mmcgill@gibsondunn.com<br><br>*Counsel for the TLA Claimholders Group* |