# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

Matthew D. McGill
Direct: +1 202.887.3680
Fax: +1 202.530.9662
mmcgill@gibsondunn.com

August 30, 2022

VIA ECF

The Honorable Denise L. Cote
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St., Room 1910
New York, NY 10007

Re:   *In re LATAM Airlines Group S.A.*, No. 22 Civ. 5891 (DLC)

Dear Judge Cote:

Appellant TLA Claimholders Group respectfully draws the Court's attention to a decision issued August 29, 2022, by the United States Court of Appeals for the Ninth Circuit in *In re PG&E Corporation*, No. 21-16043. A copy of the slip opinion is attached to this letter.

In *PG&E*, the bankruptcy court had held that unsecured creditors' claims were not "impaired" under 11 U.S.C. § 1124(1) by a reorganization plan that provided for post-petition interest at the federal judgment rate—not at the default rates provided by contract and state law—even though the reorganization provided value to the equity holders of the solvent debtor. Op. 8-9, 19. The district court affirmed, Op. 9, but the Ninth Circuit reversed, holding that that "unsecured creditors of a solvent debtor have an equitable right to postpetition interest pursuant to their contracts" and that a failure to pay that interest, under a plan that distributes value to shareholders, "results in impairment." Op. 27 (citing 11 U.S.C. § 1124(1)).

Of particular relevance here, the Ninth Circuit expressly rejected "the notion that § 502(b)(2) alone limits unimpaired creditors' ability to collect postpetition interest." Op. 23. The Ninth Circuit explained that "§ 502(b)(2) simply excludes postpetition interest from 'the amount of' a creditor's allowed claim," and it underscored the "'significant distinction'" between post-petition interest as "'*part of* an allowed claim" and "post-petition interest *on* an allowed claim.'" Op. 22 (quoting *In re Mullins*, 633 B.R. 1, 15 (Bankr. D. Mass. 2021)); *see also* Op. 30 n.9 (rejecting the view that the rights protected by section 1124(1) "encompass only those rights that are part of an allowed claim"). The Ninth Circuit observed that section 502(b)(2) "effectively restate[d]" the standards that had long applied prior to the enactment of the Bankruptcy Code, and "[t]he mere recodification" of those standards did not "reflect any Congressional instruction to limit a solvent debtor's obligation to pay interest on claims against it." Op. 22. The court further held that Congress's repeal of section 1124(3) "confirm[ed] that creditors of a solvent debtor who are designated as unimpaired *must* receive postpetition interest on their claim—notwithstanding § 502(b)(2)." Op. 25. The Ninth Circuit's holding that section 502(b)(2) does not bar payment of post-petition interest on allowed claims also deletes the key premise for the bankruptcy court's conclusion that creditors must prove solvency to qualify for an exception to the prohibition that the bankruptcy court believed section 502(b)(2) imposes. If section 502(b)(2) does not bar payment of interest on allowed claims, there is no

**GIBSON DUNN**

basis for requiring creditors to prove applicability of an exception to such a bar.

The Ninth Circuit also made clear that neither section 1129(a)(7) nor section 726(a)(5) applies to unimpaired creditors, and thus neither alters the amount of interest owed to such creditors.  Op. 15, 17, 23 n.7.  The Ninth Circuit rejected the view, adopted by the bankruptcy court here, that sections 1129(a)(7) and 726(a)(5) govern the solvent-debtor exception in cases of unimpaired creditors and cap post-petition interest at the federal judgment rate.  Op 23 n.7.  The Ninth Circuit held that it is section 1124(1)'s demand that an unimpaired creditor's rights—including the "'equitable right' to bargained-for postpetition interest when a debtor is solvent," Op. 21—remain unaltered that protects the right to post-petition interest.  Op. 25.

*PG&E* also underscores that the equitable right to post-petition interest is implicated whenever a plan proposes "allocation of surplus value from a bankruptcy estate" into the hands of equity.  Op. 33.  That requirement "flow[s] from the purpose of bankruptcy law to ensure an equitable distribution of assets" enshrined in "the common-law absolute priority rule" and its requirement "that a creditor be 'made whole' before junior interests—including equity holders—take from the bankruptcy estate."  Op. 12.  Without this rule, "a solvent debtor could reap a windfall at creditors' expense, pocketing 'money which the debtor had promised to pay promptly to the creditor.'"  *Id.* (citation omitted).  Although the Ninth Circuit noted PG&E's reported balance sheet, Op. 7, it repeatedly described an unimpaired creditor's right to post-petition interest from a solvent debtor as an "equitable right . . . to recovery of interest pursuant to their contracts . . . before [the debtor's] shareholders received surplus value."  Op. 32; *see* Op. 13–14 ("creditors of a solvent debtor were entitled to be made whole, including receiving postpetition interest pursuant to their contractual or state law default rates, before surplus value was returned to the bankrupt"); Op. 10, 11, 19, 33 (similar).  In the Ninth Circuit's view, consistent with our submission here, the equitable right to post-petition interest is violated when a plan accords value to shareholders—not merely when the liquidation or depreciated book value of a debtor's assets exceed liabilities in a snapshot analysis.

Finally, the Ninth Circuit held that depriving unimpaired unsecured creditors of post-petition interest at their agreed-upon rates is incompatible with the Bankruptcy Code's fundamental division between unimpaired and impaired creditors.  The Code "gives solvent debtors a choice: compensate creditors in full . . . or designate them as impaired claimants entitled to the full scope of the Code's substantive and procedural protections."  Op. 27.  The debtor in *PG&E*, however, had sought to "have its cake and eat it too" by depriving those creditors of post-petition interest "while depriving them of the statutory protections that impaired creditors enjoy," including the right to vote on the plan.  Op. 26.  As we have previously explained, the Debtors here have likewise sought to circumvent the Code's safeguards by depriving the TLA Claimholders Group of both post-petition interest and the opportunity to vote.

Respectfully submitted,
/s/ *Matthew D. McGill*
*Counsel for Appellant TLA Claimholders Group*
cc: Counsel of record via CM/ECF