UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
In Re: LATAM AIRLINES GROUP, S.A.,     :
                                       :
                          Debtor.      :      22cv5891 (DLC)
-------------------------------------- :
                                       :      OPINION AND ORDER
TLA CLAIMHOLDERS GROUP,                :
                                       :
                      Appellant,       :
                                       :
              -v-                      :
                                       :
LATAM AIRLINES GROUP S.A.,             :
                                       :
                      Appellee.        :
                                       :
-------------------------------------- X

APPEARANCES:

For appellant TLA Claimholders Group:
Christopher Matthew Guhin
Daniel Alexander Fliman
John Iaffaldano
Paul Hastings LLP
220 Park Avenue
New York, NY 10166

Matthew D. McGill
David Casazza
Gibson, Dunn & Crutcher, LLP
1025 Connecticut Avenue, N.W.
Washington, DC 20036

For appellee LATAM Airlines Group S.A.:
Albert Togut
Amanda Carolyne Glaubach
Bryan Kotliar
Jared Casden Borriello
Kyle James Ortiz
Patrick Daniel Marecki
Togut, Segal & Segal LLP
One Penn Plaza
New York, NY 10119

Lisa Maria Schweitzer
Luke Ashe Barefoot
Richard James Cooper
Thomas S. Kessler
David H. Herrington
Cleary Gottlieb
One Liberty Plaza
New York, NY 10006

For intervenor-appellee Banco del Estado de Chile:
Pedro Alfonso Jimenez
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

For intervenor-appellee Parent Ad Hoc Claimant Group:
Rachael Lynn Ringer
David Ellis Blabey, Jr.
Douglas Patrick Buckley
Kenneth H. Eckstein
Kramer Levin Naftalis & Frankel
1177 Avenue of The Americas
New York, NY 10036

For intervenor-appellee Ad Hoc Group of LATAM Bondholders:
John K. Cunningham
Richard Kebrdle
Varoon Sachdev
White & Case LLP
200 South Biscayne Blvd., Suite 4900
Miami, FL 33131

Gregory M. Starner
Kathryn Sutherland-Smith
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020

DENISE COTE, District Judge:

TAM Linhas Aéreas S.A. ("TLA"), also known as LATAM

Airlines Brasil, is an indirect wholly owned subsidiary of LATAM

Airlines Group, S.A. ("LATAM").  The Ad Hoc Group of TLA

Claimholders (the "appellant" or the "TLA Claimholder Group") holds certain loans made to TLA.  In 2020, LATAM and several of its affiliates (together, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Code").

The TLA Claimholder Group has appealed a ruling by the Honorable James L. Garrity, Jr., U.S. Bankruptcy Judge, confirming the Debtors' plan of reorganization (the "Plan"). LATAM opposes the appeal, as do intervenors Parent Ad Hoc Claimant Group, Ad Hoc Group of LATAM Bondholders, Official Committee of Unsecured Creditors, and Banco del Estado de Chile. The TLA Claimholder Group has also filed a motion to stay the Bankruptcy Court's order confirming the Plan.  For the following reasons, the appeal is denied, and the Bankruptcy Court's confirmation of the Plan is affirmed.  The motion to stay the order confirming the Plan is also denied.

## **Background**

The Court assumes familiarity with today's Opinion and Order in the related appeal, In re LATAM Airlines Group, S.A., 22cv5660.  Only the facts relevant to this appeal are summarized below.

LATAM is Latin America's leading airline group and is the ultimate parent company of TLA.  LATAM holds the equity of TLA

through LATAM's wholly owned subsidiary, TAM S.A.  In 2020, LATAM and several of its affiliates filed voluntary petitions for relief under Chapter 11 of the Code in the U.S. Bankruptcy Court for the Southern District of New York.

In late 2021, the Debtors entered mediation and ultimately reached an agreement with certain creditors and shareholders on the restructuring and recapitalization of the Debtors.  In spring of 2022, the Debtors solicited votes on the Plan, which was accepted by the classes designated as impaired under the Plan.  On June 18, 2022, the Bankruptcy Court entered an opinion confirming the Plan over the objections of certain creditors including the objection of the TLA Claimholder Group.  In re LATAM Airlines Group S.A., No. 20BK11254 (JLG), 2022 WL 2206829, at *56 (Bankr. S.D.N.Y. June 18, 2022).

I.   Treatment of the TLA Claimholder Group Under the Plan

The TLA Claimholder Group holds approximately $300 million in allowed claims against TLA, which are evidenced by four debt instruments (the "Debt Instruments").  Each of the Debt Instruments provides for (1) interest at specified pre-default rates, (2) post-default rates of interest of 1% per month, (3) a 2% post-default late payment charge, and (4) certain fees and expenses, including attorneys' fees.  TLA's obligations under

the Debt Instruments are unsecured.  TLA defaulted on the Debt Instruments in mid-2020.

Under the Plan, the TLA Claimholder Group is classified in Class 6, which includes all the general unsecured claims against all Debtors except LATAM, Piquero Leasing Limited, and LATAM Finance.  Class 6 creditors are classified as unimpaired and, as a result, were not entitled to vote on the Plan.  The Plan provides that Class 6 creditors must receive:

> (x) [c]ash equal to the amount of [their] Allowed Class 6 Claim; (y) such other less favorable treatment as to which the Debtors and the Holder of such Allowed Class 6 Claim shall have agreed upon in writing or (z) such other treatment such that the applicable Allowed Class 6 Claim will be rendered Unimpaired pursuant to section 1124 of the Bankruptcy Code.

The amount of the Allowed Class 6 Claims does not include post-petition interest ("PPI").

II.  The Confirmation Proceedings

During the Bankruptcy Court proceedings, the TLA Claimholder Group objected to the Plan because it failed to provide the group with roughly $150 million in PPI even though TLA, it argued, was solvent.  The TLA Claimholder Group contended that "to unimpair an unsecured creditor of a solvent debtor, a plan must provide for the payment of PPI to the creditor. . . .  Absent payment of PPI at the contract rate . . . , the legal, equitable, and contractual rights of

unsecured creditors of a solvent debtor do not remain unaltered by a plan." The TLA Claimholder Group acknowledged that "although section 502(b)(2) of the Bankruptcy Code (and pre-Code law) generally disallows unmatured interest as part of an unsecured creditor's claim, the solvent debtor exception requires that unsecured creditors of a solvent debtor receive their full contractual rights, including PPI on their claims." Further, they argued that the law "entitle[s] holders of unsecured claims of solvent debtors to receive PPI on their claims at the applicable contract rate," rather than the federal judgment rate.

On June 18, 2022, following a three-day hearing, the Bankruptcy Court issued a 125-page opinion (the "Confirmation Opinion") confirming the Plan over several objections, including the objection of the TLA Claimholder Group. LATAM Airlines Group, 2022 WL 2206829, at *56. The Bankruptcy Court considered and rejected the TLA Claimholder Group's objection that TLA was solvent, thereby entitling it to PPI.

The Bankruptcy Court acknowledged that the Plan treated the TLA Claimholder Group's claims as unimpaired because, under § 502(b)(2) of the Code, those claimholders were not entitled to PPI and the Plan provided that their claims were otherwise paid in full. The Bankruptcy Court accordingly considered whether

the "solvent debtor exception" applied.  Id. at *10–18.  Under
that exception, the Bankruptcy Court explained, "unimpaired
creditors of solvent debtors may nevertheless be entitled to
PPI."  Id. at *8.

To resolve the question of solvency, the Bankruptcy Court
looked to the Code's definition of "insolvent" -- "the financial
condition such that the sum of [an] entity's debts is greater
than all of such entity's property, at a fair valuation."  Id.
at *10 (quoting 11 U.S.C. § 101(32)).  The Bankruptcy Court
found both that the TLA Claimholder Group had not presented
meaningful evidence of TLA's solvency and that the proponents of
the Plan, by contrast, had affirmatively proved that TLA was
insolvent.  Id. at *8.

The TLA Claimholder Group had presented, through expert
testimony, two methodologies for calculating TLA's purported
solvency, both of which the Court rejected.  One of these
methods, a "distributable value waterfall" method, calculated
TLA's purported equity value after satisfying certain identified
claims.  Id. at *12.  The second method, a "discounted cash
flow" analysis, calculated the present value of TLA's projected
future cash flows.  Id. at *13.

The Bankruptcy Court accorded "little to no weight" to
these methodologies because "insolvency is determined, in part,

by the fair market price that a debtor could obtain through the
sale of its assets in a prudent manner." Id. (citing In re
SunEdison, Inc., 556 B.R. 94, 104 (Bankr. S.D.N.Y. 2016)).  The
TLA Claimholder Group's two methodologies failed to apply this
standard because "neither assesses the aggregate price TLA could
obtain for its assets." Id. at *13-16.  Thus, the Bankruptcy
Court held that the TLA Claimholder Group failed to prove that
TLA was solvent.  Id.

    By contrast, the Bankruptcy Court held that the proponents
of the Plan had presented two methodologies for calculating
TLA's insolvency that satisfied the relevant standard.  Id. at
*16-18.  The Plan proponents' expert used a "liquidation
analysis" method and a "balance sheet test." Id. at *16.  Under
the liquidation analysis, the proponents' expert "analyze[d] the
funds that would be raised if each item of property (i.e., each
asset) of TLA were sold at market value in an orderly sale
process, and then compare[d] that total amount to the total
amount of TLA's claims and liabilities." Id. (footnote
omitted).  Under the balance sheet test, the Plan proponents'
expert compared TLA's total liabilities and assets as reflected
on TLA's audited 2021 financial statements and TLA's unaudited
2022 balance sheet and concluded that the value of TLA's assets
was inadequate to cover its liabilities.  Id. at *17.

The Bankruptcy Court found that, unlike the TLA Claimholder
Group's methodologies, both the liquidation analysis and the
balance sheet test complied with the relevant standard for
solvency because "they measure TLA's assets on an asset-by-asset
basis."  Id. at *18.  Thus, the Bankruptcy Court found that not
only had the TLA Claimholder Group failed to prove TLA's
solvency, but the Plan proponents had affirmatively shown that
TLA was insolvent.  As a result, the Bankruptcy Court held that
the solvent debtor exception could not apply.  Id.

The Bankruptcy Court next considered whether, assuming that
TLA were solvent, the TLA Claimholder Group would be entitled to
PPI at the rate set forth in the Debt Instruments or at the
federal judgment rate.  Id. at *18-25.  The Bankruptcy Court
held that, assuming the TLA Claimholder Group could claim the
benefit of the solvent debtor exception, it would at most be
entitled to PPI at the federal judgment rate.  Id.

Finally, the Bankruptcy Court considered whether "the
balance of the equities separately entitle[d]" the TLA
Claimholder Group to PPI.  Id. at *25.  The court held that it
did not because

> it would not be equitable to allow the TLA
> Claimholders to receive approximately $150 million
> more to satisfy [their claims] given the context of
> the Plan.  The Plan represents a delicate, intricate,
> and integrated compromise of myriad claims, arguments,
> and rights. . . .  As such, providing the TLA

9

> Claimholders with an additional recovery would reduce
> the recoveries to impaired creditors under the Plan
> and risk disrupting the delicate balance set forth in
> it.

Id.

III. Subsequent Proceedings

On June 23, 2022, the TLA Claimholder Group filed a motion to the Bankruptcy Court to stay the confirmation order pending an appeal.  On July 8, the Bankruptcy Court, after a hearing, issued a 32-page opinion denying the motion to stay (the "Stay Opinion").  In re LATAM Airlines Group S.A., No. 20BK11254 (JLG), 2022 WL 2657345 (Bankr. S.D.N.Y. July 8, 2022).  The Bankruptcy Court reasoned that any risk of harm to the TLA Claimholder Group in denying a stay was outweighed by the risk of harm to the Debtors in granting a stay.  Id. at *4-9.

The Bankruptcy Court also explained that the TLA Claimholder Group could not show a substantial possibility of success on appeal.  Id. at *9-11.  Specifically, the Bankruptcy Court noted that a reviewing court would likely not overturn the finding that TLA was insolvent due to the "clear error" standard applicable to findings of fact.  Id. at *10.  Further, "[b]ecause proving that TLA is solvent [was] the lynchpin of their objection to the Plan," the TLA Claimholder Group did not have a substantial possibility of success on appeal.  Id. at *10 (citation omitted).

10

In seeking the stay, the TLA Claimholder Group argued to the Bankruptcy Court that the factual question of TLA's solvency was not the threshold issue for resolving the TLA Claimholder Group's claim to PPI.  It argued that the threshold issue was instead a legal one, namely whether the TLA Claimholder Group was impaired by the Plan under § 1124.  Id.  The TLA Claimholder Group contended that this was the threshold question because it was the first issue considered in the Bankruptcy Court's Confirmation Opinion.  See LATAM Airlines Group, 2022 WL 2206829, at *9.  The Bankruptcy Court disagreed.  The court explained that, although it

> held that the TLA Claimholders are unimpaired under
> the Plan before finding that TLA was insolvent, that
> does not alter the fact that solvency is the lynchpin
> of the TLA Claimholders' objection.  Put differently,
> the crux of the objection is that the TLA Claimholders
> are entitled to PPI at the rate set forth in the Debt
> Instruments because the solvent debtor exception
> applies through the Bankruptcy Code in section
> 1124(1).  If a debtor is not solvent, there is no need
> to consider or apply the solvent debtor exception
> whatsoever and, in turn, no need to assess section
> 1124(1).

LATAM Airlines Group, 2022 WL 2657345, at *11.

Finally, the court found that the public interest in consummating the Plan outweighed the public interest in correcting any alleged legal errors in the Confirmation Opinion.  Id. at *11-15.  The Bankruptcy Court noted in this portion of the Stay Opinion that

[a]mong other things, the Plan, as modified, will have
to be feasible in order to go effective.  The Plan is
a product of a series of interrelated compromises,
settlements, and other agreements among the Debtors
and certain of its principal unsecured creditors and
certain of its equity holders.  It is undisputed that
if the TLA Claimholders were to succeed on their
claim, the sole impact would not necessarily be
payment of $145 million of PPI.  Instead, the Debtors
and their stakeholders would need to consider how and
whether to develop and incorporate a new plan and a
new set of underlying agreements that account for such
an obligation. . . .  The Debtors have demonstrated
that if they are required to pay PPI to the TLA
Claimholders, they will be required, among other
things, to attempt to formulate, negotiate and execute
a new restructuring support agreement, a new set of
backstop agreements, a new set of financing
agreements, and a new plan, and then seek Court
approval of the new agreements and plan and obtain
voting approval by the various constituents of the
Debtors' estates.

Id. at *14.  For all these reasons, the Court held that a stay

of the Plan was unwarranted.

Meanwhile, on July 8, 2022, the TLA Claimholder Group,

represented by new counsel, filed a motion to the Bankruptcy

Court to certify their appeal to the Second Circuit Court of

Appeals.  The Bankruptcy Court issued a 34-page opinion on July

26 denying this motion (the "Certification Opinion").  In re

LATAM Airlines Group S.A., No. 20BK11254 (JLG), 2022 WL 2962948

(Bankr. S.D.N.Y. July 26, 2022).

In the Certification Opinion, the Bankruptcy Court

explained that the TLA Claimholder Group's proposed arguments on

appeal were not presented below and were thus not a proper basis

for appeal.  Id. at *5.  In seeking certification, the TLA
Claimholder Group asserted that its "arguments on appeal do not
depend on the debtors' solvency -- i.e., that as a matter of
law, unsecured creditors are entitled to contract-rate PPI to be
rendered unimpaired under section 1124(1)."  Id. at *4 (citation
omitted).  The Bankruptcy Court rejected this attempt to insert
a new legal issue into the proceedings.  It explained that "at
each juncture of these Chapter 11 Cases, the TLA Claimholders'
arguments in opposition to the Plan were predicated on the Court
finding that TLA was solvent and, in turn, that the solvent
debtor exception" applied.  Id. at *5.  "As such," the
Bankruptcy Court reasoned, "there [was] no basis for an
appellate court to consider whether the [TLA Claimholder Group]
must be paid PPI to be rendered unimpaired outside of the
context of TLA's solvency -- the only basis in which they raised
this issue in their Plan objection."  Id. at *9.

       On July 11, the TLA Claimholder Group filed its appeal to
the Southern District of New York.  The case was assigned to
this Court on July 12.  On July 13, the parties agreed to an
expedited briefing schedule for the appeal.  In accordance with
the agreed-upon schedule, the appellant filed its brief on July

13

18.   The appellee and four intervenors[1] filed their responsive briefs in the appeal on August 8.  The appellant filed its reply on August 15.

On August 1, the appellant also filed a motion before this Court to stay the Bankruptcy Court's order confirming the Plan pending the resolution of the appeal.  The appellee and two intervenors, the Parent Ad Hoc Claimant Group and the Ad Hoc Group of LATAM Bondholders, each filed responses to this motion on August 12.  The appellant filed its reply on August 19.

Separately, on July 1, different creditors filed an appeal of two rulings of the Bankruptcy Court -- the confirmation of the bankruptcy plan and the approval of certain backstop agreements.  Briefing on this related appeal was fully submitted on August 5.  Oral argument in both appeals was held on August 26.

## Discussion

The TLA Claimholder Group contends on appeal that it is entitled to PPI constituting approximately $150 million.  In

---

[1] On July 27, the Parent Ad Hoc Claimant Group moved to intervene as an appellee.  The following day, Banco Del Estado de Chile also moved to intervene.  Those motions to intervene were granted on August 4.  Also on August 4, the Official Committee of Unsecured Creditors moved to intervene as an appellee.  This motion was granted on August 5.  Finally, on August 8, the Ad Hoc Group of LATAM Bondholders moved to intervene, and its motion was granted the following day.

bringing this appeal, it relies on the solvency exception to the ordinary bar against a claim for PPI and argues that the Bankruptcy Court erred in finding TLA insolvent.  It also argues, however, that it has a claim for PPI even if TLA is insolvent.  This second issue was not included in the appellant's objection to the Plan and will be addressed second. The TLA Claimholder Group also moves to stay the Bankruptcy Court's order confirming the plan pending resolution of the appeal.  The stay motion is addressed last.

I.   Appeal

The standard for review of an appeal from a bankruptcy court's decision is well established.  A bankruptcy court's factual findings are accepted on appeal unless they are clearly erroneous, and its conclusions of law are reviewed de novo.  In re DiBattista, 33 F.4th 698, 702 (2d Cir. 2022).  "A finding of fact is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  In re Lehman Bros. Holdings Inc., 855 F.3d 459, 469 (2d Cir. 2017) (citation omitted).  "[I]f the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence

differently." <u>In Matter of Motors Liquidation Co.</u>, 829 F.3d 135, 158 (2d Cir. 2016) (citation omitted).

       1.    Solvency of TLA

On appeal, the TLA Claimholder Group challenges the Bankruptcy Court's finding that TLA was solvent. In its objection to the Plan, the appellant had argued that it was entitled to roughly $150 million in PPI because TLA was solvent. The Bankruptcy Court found that TLA was insolvent and rejected the TLA Claimholder Group's claims for PPI. The appellant has failed to show that the rejection was in error.

Under both pre- and post-Code bankruptcy law, the rule on PPI is unequivocal: PPI for unsecured or undersecured creditors is generally unavailable. <u>See, e.g.</u>, <u>Nicholas v. United States</u>, 384 U.S. 678, 682 (1966); <u>Bruning v. United States</u>, 376 U.S. 358, 362 (1964); <u>Vanston Bondholders Protective Comm. v. Green</u>, 329 U.S. 156, 163 (1946); <u>Sexton v. Dreyfus</u>, 219 U.S. 339, 344 (1911). Today, this rule is codified in § 502(b)(2) of the Code. Section 502(b)(2) states that a claim is disallowed "to the extent that . . . such claim is for unmatured interest." 11 U.S.C. § 502(b)(2). <u>See also</u> S. Rep. No. 95-989, at 63 (1978), <u>as reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5849 ("[I]nterest stops accruing at the date of the filing of the petition, because any claim for unmatured interest is disallowed under [Rule

502] . . . ."); <u>United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.</u>, 484 U.S. 365, 373 (1988) (citing § 502(b)(2) for the "general rule disallowing postpetition interest").

There is a limited exception to this rule in the rare cases in which a debtor proves to be solvent.  As the Court explained in <u>Vanston</u>, "where an estate [is] ample to pay all creditors and to pay interest even after the petition was filed, equitable considerations [are] invoked to permit payment of [post-petition] interest" to the creditor rather than the debtor.  329 U.S. at 164; <u>see also</u> <u>Ruskin v. Griffiths</u>, 269 F.2d 827, 831 (2d Cir. 1959) (noting that the general rule against PPI should not "be applied in the case of a solvent debtor").  Courts have concluded that this solvent debtor exception survived the enactment of the Code.  <u>See, e.g.</u>, <u>In re PG&E Corp.</u>, No. 21-16043, slip op. at 19 (9th Cir. Aug. 29, 2022); <u>In re Hertz Corp.</u>, 637 B.R. 781, 800 (Bankr. D. Del. 2021); <u>In re Ultra Petroleum Corp.</u>, 624 B.R. 178, 203 (Bankr. S.D. Tex. 2020).[2]

---

[2] There is some debate among courts about how exactly the exception operates under the Code.  <u>See, e.g.</u>, <u>PG&E Corp.</u>, slip op. at 29-30 (concluding that the solvent debtor exception survived through the equitable prong of § 1124); <u>Ultra Petroleum</u>, 624 B.R. at 203 (same); <u>Hertz</u>, 637 B.R. at 800 (concluding that the Code "expressly codified the solvent debtor exception in section 506(b) as to oversecured creditors and in section 1129(a)(7) and 726(a)(5) as to unsecured creditors").  It is unnecessary to resolve that debate here, however, because

Thus, based on the general prohibition on a claim for PPI and the exception for solvent debtors, an unsecured creditor's entitlement to PPI in a Chapter 11 proceeding turns on whether the debtor is solvent.

The Code does not define "solvent," but defines "insolvent" in relevant part as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32). "Fair value, in the context of a going concern, is determined by the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts." In re Roblin Indus., Inc., 78 F.3d 30, 35 (2d Cir. 1996). The Second Circuit has instructed that a bankruptcy court "has broad discretion" when considering evidence to support a finding of insolvency. Id.

Here, the Bankruptcy Court found that TLA was insolvent, and this finding was not clearly erroneous. In holding that TLA was insolvent, the Bankruptcy Court applied the Code's definition of insolvency, which the appellant agreed below was the proper standard. LATAM Airlines Group, 2022 WL 2206829, at *10 (citing 11 U.S.C. § 101(32)). The court also applied the

there is nothing clearly erroneous with the Bankruptcy Court's finding that TLA was insolvent.

correct rule for assessing fair value in the context of a going concern.  Id. at *13.  Under this framework, the court carefully considered four different methods for evaluating TLA's solvency. Id. at *12–18.

As the Bankruptcy Court reasoned, only the methods presented by the Plan proponents -- the liquidation analysis and the balance sheet test -- properly measured TLA's assets for the purposes of determining solvency under the agreed-upon standard. These methods each evaluated TLA's assets on an asset-by-asset basis.  Since "fair value" must be determined with reference to the fair market price that could be obtained by selling the assets in a prudent manner and a reasonable period of time, see Roblin Indus., 78 F.3d at 35, such asset-by-asset valuation is appropriate.

By contrast, the alternative methods presented by the TLA Claimholder Group -- a distributable value waterfall analysis and a discounted cash flow analysis -- both suffered from infirmities.  The Bankruptcy Court found that the distributable value waterfall method was not relevant to the question of solvency because it relied on a valuation of TLA's equity in a different context and "d[id] not speak to whether 'the sum of [TLA's liabilities] is greater than all of [TLA's property] . . . .'"  LATAM Airlines Group, 2022 WL 2206829, at

*15 (quoting 11 U.S.C. § 101(32)).  The discounted cash flow
analysis was similarly flawed.  This methodology relied on
measurements of "the <u>current</u> value of <u>future</u> cash flows --
amounts that are inherently subjective, indefinite, and do not
speak to the value of the assets TLA holds today or held at the
Petition Date."  <u>Id.</u> at *16.

     Thus, as the lower court found, the Plan proponents'
methods for calculating solvency are more persuasive than those
provided by the TLA Claimholder Group.  Even if this Court
disagreed with the lower court's findings on solvency -- which
it does not -- it is not this Court's role to offer an
independent opinion on TLA's solvency.  <u>See</u> <u>Motors Liquidation</u>
<u>Co.</u>, 829 F.3d at 158.  It is enough to say that this Court is
not "left with the definite and firm conviction that a mistake
has been committed" in the Bankruptcy Court's solvency analysis.
<u>Lehman Bros.</u>, 855 F.3d at 469.

     On appeal, the appellant does not offer a full-throated
critique of the Bankruptcy Court's solvency analysis.  Rather
than dispute the factual findings, the appellant primarily
argues that the Bankruptcy Court applied the wrong legal
standard for assessing solvency.  The appellant contends that
"the analysis should look to what a willing buyer would pay to
acquire the entire business" rather than considering the

aggregate value of individual assets and liabilities.  The
appellant similarly argues that "because TLA has value as an
operating business, any fair valuation of its assets must take
into account its worth as a going concern."

    These arguments lack merit.  The Second Circuit has
explained that "[f]air value, in the context of a going concern,
is determined by the fair market price of the debtor's assets
that could be obtained if sold in a prudent manner within a
reasonable period of time to pay the debtor's debts."  Roblin
Indus., 78 F.3d at 35 (emphasis added).  This is precisely the
inquiry undertaken by the Bankruptcy Court, and its conclusions
are not clearly erroneous.  The other cases cited by the
appellant, Consolidated Rock Products Co. v. DuBois, 312 U.S.
510 (1941), and Associates Commercial Corp. v. Rash, 520 U.S.
953 (1997), did not address valuation in the context of
solvency.  See Consol. Rock, 312 U.S. at 525–26 (valuation of
"prospective earnings" when assessing fairness of reorganization
plan); Assocs. Com. Corp., 520 U.S. at 965 (valuation of an
asset in the context of § 506(a)).  Therefore, those decisions
are not controlling here.

    The appellant also briefly suggests in a footnote that the
valuation performed by the Bankruptcy Court did not adequately
take into account TLA's frequent flyer program.  When the

appellant raised the frequent flyer program below, however, the Bankruptcy Court found that the program did not move the needle towards solvency.  LATAM Airlines Group, 2022 WL 2206829, at *25, n.55.  The Bankruptcy Court noted that, contrary to the arguments of the TLA Claimholder Group, the program did not affect the assumptions underlying the Plan proponents' solvency analysis.  Id.

Therefore, the determination that TLA was insolvent was not clearly erroneous.  Because TLA is insolvent, the TLA Claimholder Group was not entitled to PPI.  As explained above, the longstanding rule in bankruptcy law is that PPI is generally prohibited.  The only exception, as the appellant itself recognized below, applies in cases where the debtor proves to be solvent.  As a result, the appellant cannot demonstrate an entitlement to PPI and was, as the Bankruptcy Court confirmed, an unimpaired creditor.

2.   Entitlement to PPI When the Debtor is Solvent

The TLA Claimholder Group, with new counsel, has largely abandoned in this appeal its argument that TLA was solvent. Instead, it now contends -- contrary to foundational principles in bankruptcy law -- that solvency is irrelevant to its claim to PPI.  Relying on the absolute priority rule and a complex and novel reading of §§ 726(a)(5), 1124(1), and 1124(2) of the Code

(informed by Congress's decision in 1994 to strike § 1124(3) from the Code), the appellant asks this Court to revolutionize bankruptcy law and find that it is entitled to PPI even if TLA is insolvent.

"It is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal."  In re Nortel Networks Corp. Secs. Litig., 539 F.3d 129, 132 (2d Cir. 2008) (citation omitted).

> Although [a reviewing court] may exercise discretion
> to consider waived arguments where necessary to avoid
> a manifest injustice, the circumstances normally do
> not militate in favor of an exercise of discretion to
> address new arguments on appeal where those arguments
> were available to the parties below and they proffer
> no reason for their failure to raise the arguments
> below.

Id. at 133 (citation omitted); see also Doe v. Trump Corp., 6 F.4th 400, 410 (2d Cir. 2021).

The appellant's arguments regarding the absolute priority rule and the interpretation of §§ 726, 1124, and 1129 to support its claim to PPI are forfeited.[3]  The appellant's entire position

---

[3] The Court of Appeals has instructed that the terms "waiver" and "forfeiture" have distinct meanings even though courts sometimes use the terms interchangeably.  The "term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right.  Where a litigant's action or inaction is deemed to incur the consequence of a loss of a right, or [argument], the term 'forfeiture' is more appropriate."  Trump Corp., 6 F.4th at 409 n.6 (quoting Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999)).

below hinged on its contention that TLA was solvent.  It said:
"although section 502(b)(2) of the Bankruptcy Code (and pre-Code
law) generally disallows unmatured interest . . . , the <u>solvent</u>
<u>debtor exception</u> requires that unsecured creditors of a <u>solvent</u>
<u>debtor</u>" receive PPI.  (Emphases added.)

Appellant, citing to certain remarks made in a few filings
and hearings during the Bankruptcy Court proceedings, tries to
reconfigure its arguments below to suggest that the arguments on
appeal are not new.  But the cited remarks are just cherry-
picked comments stripped of their full context.  As the
Bankruptcy Court observed in its decision denying the
appellant's motion to certify the appeal to the Court of
Appeals, solvency was always "the lynchpin of the TLA
Claimholders' objection."  <u>LATAM Airlines Group</u>, 2022 WL
2962948, at *6.

Citing <u>United States v. Harrell</u>, 268 F.3d 141, 146 (2d Cir.
2001), the appellant argues that its arguments are not forfeited
because they were "pressed or passed upon below," even if only
briefly.  <u>Harrell</u> itself, however, makes clear that "[a] claim
is 'pressed or passed upon' when it fairly appears in the record
as having been raised or decided."  <u>Id.</u>  The only thing that
fairly appears in the record in this case is that the
appellant's objection was litigated exclusively with reference

to solvency.  The appellant did not raise arguments about impairment outside the context of solvency, and the Bankruptcy Court did not decide any issues outside the context of solvency.

Any suggestion that solvency was irrelevant to the analysis was, as the Bankruptcy Court noted, never raised to that court in any more than a "perfunctory" manner.  LATAM Airlines Group, 2022 WL 2962948, at *6.  Such perfunctory comments are inadequate to preserve an issue for appeal.  See, e.g., Trump Corp., 6 F.4th at 410; 23-34 94th St. Grocery Corp. v. New York City Bd. of Health, 685 F.3d 174, 184 n.8 (2d Cir. 2012).

Finally, the appellant points to the Supreme Court's opinion in Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 379 (1995), to argue that as long as a claim is in general pressed below, parties can make any argument in support of that claim on appeal.  At the outset, the appellant does not explain why a self-imposed prudential rule governing the Supreme Court, see id. (discussing "[o]ur traditional rule" and "[o]ur practice"), is applicable to this Court's review of the Bankruptcy Court's decision.  In the Second Circuit, a party "must present the relevant legal arguments in [the lower court] in order to preserve them for appellate review."  Trump Corp., 6 F.4th at 410 (quoting Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009)).  Moreover, the appellant's claim on appeal is

starkly different from its claim below.  Below, the appellant claimed that the Plan was invalid and had to be rejected because it failed to provide the appellant with PPI.  Now the appellant embraces the Plan and argues that the Plan itself requires payment of PPI.  So, even under the appellant's proposed rule, its arguments were not preserved.

To be sure, the rule against considering new issues on appeal is prudential, not jurisdictional.  <u>Nortel Networks</u>, 539 F.3d at 133.  But in a case such as this, prudence dictates against entertaining this forfeited argument.  The appellant's reading of the Code would revolutionize bankruptcy law.  It flies in the face of the plain meaning of § 502(b)(2) and the long line of authority disallowing claims of PPI.  Any argument of this importance should not be presented for the first time on appeal.  Because the appellant's reasoning represents such a radical departure from well-established bankruptcy law, it should first be presented to a bankruptcy court where that court will have assistance from all bankruptcy counsel to consider fully the ramifications of the appellant's complex reading of the interplay of several Code provisions.

This is particularly important here, where the lower court carefully managed an international bankruptcy, juggling diverse interests and even legal systems that are in tension with each

other.  The result was the confirmation of a Plan representing
"a delicate, intricate, and integrated compromise of myriad
claims, arguments, and rights."  LATAM Airlines Group, 2022 WL
2206829, at *25.  Were this Court to follow the appellant's new
reasoning and grant PPI without any consideration of solvency,
the Court would disrupt not only the long-standing traditions of
bankruptcy law, but also "the delicate balance set forth in" the
Plan.  Id.

Trying to minimize the enormity of the impact its reading
of bankruptcy law would have on the Plan and the Debtors' timely
emergence from bankruptcy, the appellant argues that the Debtors
can simply pay $150 million in PPI to the TLA Claimholder Group
without revising the Plan or submitting the revised Plan to a
vote.  Not so.  The same treatment must be given to each claim
or interest of a particular class.  11 U.S.C. § 1123(a)(4).
Thus, no court can award PPI to a single claimant without regard
to the duty to provide equal treatment.  As the Bankruptcy Court
explained, acceptance of the appellant's new theory of
entitlement to PPI would require the Debtors to renegotiate and
execute a new plan and submit that new plan to a vote of all
impaired creditors.  See LATAM Airlines Group, 2022 WL 2657345,
at *14.

27

Finally, entertaining forfeited arguments is unwarranted here since the appellant has presented no satisfactory reason why "manifest injustice" would result by declining to consider the new arguments.  If the appellant felt that it was entitled to PPI without regard to solvency, it certainly could have argued as much below.  But it did not.  Instead, the appellant chose to follow the traditions of bankruptcy law and argue that it was entitled to PPI only by virtue of TLA's alleged solvency.

II.  Stay Motion

The TLA Claimholder Group has also moved to stay the Bankruptcy Court's June 18 Order pending an appeal.  The appellant's motion to stay is denied.

> The four factors to be considered in issuing a stay pending appeal are well known: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

In re World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (citation omitted).

The first factor weighs heavily against a stay.  As discussed above, the appellant has not shown that it is likely to succeed on appeal.  The appellant's position below was premised on TLA's solvency, and the Bankruptcy Court's conclusion that TLA was insolvent is not clearly erroneous.

Any new arguments are forfeited, and the circumstances of the case counsel strongly against the exercise of discretion to consider them.

The second factor -- irreparable injury to the appellant in the event a stay is not granted -- weighs, at most, slightly in favor of a stay.  The potential harm identified by the appellant is the loss of its appellate rights should the appeal become equitably moot.  Courts are divided as to whether a risk of mootness, standing alone constitutes irreparable harm.  In re Adelphia Commc'ns Corp., 361 B.R. 337, 347 (S.D.N.Y. 2007) (collecting cases).  The Debtors are taking steps to consummate the Plan as quickly as possible, which could make its consummation irreversible as soon as September 2022.  Thus, it is assumed that the threat of equitable mootness creates at least some injury in this case.

The third factor, which considers harm to other parties should a stay be granted, weighs strongly against a stay.  The Debtors identify various financial harms that would occur if a stay were granted.  For example, a stay could jeopardize their ability to close on certain financing agreements supporting their exit from bankruptcy.  A stay would also increase the risk that the commitments in certain backstop agreements would

need to be extended until at least November 30, at a cost of $73 million.

The fourth factor also weighs heavily against a stay. The public interest lies in favor of consummation of the Plan. The Plan represents a carefully negotiated agreement balancing a multitude of conflicting interests. Moving forward with the Plan enables LATAM to emerge from bankruptcy and continue providing services to the public.

Balancing these factors, the Court finds that a stay is not warranted. It is particularly inappropriate to forestall consummation of the Plan where the only harm to the appellant absent a stay is the possibility that the appellant may be unable to pursue a second appeal that is almost certain to fail.

## Conclusion

The appeal by the TLA Claimholder Group is denied, and the Bankruptcy Court's June 18, 2022 confirmation of the Plan is affirmed. The appellant's request for a stay is also denied.

Dated:     New York, New York
           August 31, 2022

                                    _____
                                    DENISE COTE
                                    United States District Judge